## IWAKAMI & Co. *v.* UNITED STATES (No. 1265).[1]

MINERAL WATER—WHAT NOT.

"Nigari" is not palatable, is not used as a drinking water nor for medicinal purposes, but is used in the cooking of certain oriental dishes. This article is not to be taken as a mineral water as contemplated by paragraph 312, tariff act of 1909. The record does not disclose with precision facts necessary in making a true classification of the merchandise.

United States Court of Customs Appeals, April 28, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33376 (T. D. 33695).
[Reversed.]

*William Hayward* for appellants.

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel; *Henry H. Childress*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This is an appeal involving the proper dutiable classification of what is commonly known as "Nigari," a water imported from Japan at

---

[1] Reported in T. D. 34427 (26 Treas. Dec., 734).

the port of San Francisco. It was rated for dutiable purposes by the collector of customs at that port as a mineral water under paragraph 312 of the tariff act of 1909, which provides for "all mineral waters and all imitations of natural mineral waters, and all artificial mineral waters not specially provided for in this section * * *." The importers contend that this assessment was erroneous, and, among other things which we here deem unimportant, that the merchandise was dutiable either as a nonenumerated unmanufactured article or as a nonenumerated manufactured article under the provisions of paragraph 480 of said act. The Board of General Appraisers, resting its decision upon its conclusion in two previous cases, Abstract 22595 (T. D. 30294) and Abstract 19128 (T. D. 29056), involving the same product, affirmed the decision of the collector. Testimony was offered before the Board of General Appraisers which is exceedingly unsatisfactory. It is disconnected, contradictory, and uncertain. While the witnesses attempted to describe the method of production of the article, no certain, definite conclusion can be reached by reading all the testimony together. The board appreciated this fact, resting its decision largely if not wholly upon previous decisions of the board. Those decisions, however, were rested more upon a lack than the sufficiency of evidence. It does appear in the record without contradiction that the article is not palatable, that it is not used as a drinking water nor for medicinal purposes, but that it is used in the cooking or preparation of certain oriental dishes. This testimony is uncontradicted. We do not think that such an article is within the classification of mineral waters as that term is used by Congress in the paragraph quoted. The lexicographic authorities are uniform upon the subject and we think accord perfectly with the common everyday understanding that a mineral water imports something suitable and used for drinking or medicinal purposes.

Thus the Century Dictionary and Cyclopedia speaks of a mineral water as follows:

A name given to certain spring waters so far impregnated with foreign substances as to have a decided taste and a peculiar operation on the physical economy.

The Standard Dictionary speaking to this subject recites:

A natural water coming from a spring and containing some characteristic mineral ingredient, as carbon dioxid or a lithium salt. Mineral waters are extensively used in medicine and are described according to their ingredients. The phrase has also been largely applied to artificial waters made by dissolving the salts in pure water.

Webster's New International Dictionary in defining the subject says:

Any natural water so impregnated with gaseous or saline substances as to have a particular flavor or medicinal effect; also water artificially so impregnated.

Perhaps the best definition is found in the Oxford Dictionary, which gives the original and modern meaning and present application of the term, as follows:

Originally, water found in nature impregnated with some mineral substance, usually such as is used medicinally. * * * Later, applied also to artificial imitations of natural mineral waters; e. g., soda water, seltzer water and in recent use extended to include other effervescent drinks, as lemonade and ginger beer.

We do not think that this imported merchandise can fairly be said to fall within that definition. There is not in this record, however, sufficient testimony to satisfactorily establish the method of production of the imported article. Some parts of the testimony would indicate it the product of methods devised and pursued for the express purpose of producing the imported article, whilst other portions of the testimony would indicate it a mere by-product or accidental incident to the manufacture of salt which has not undergone any manufacturing processes, but which is merely something which exudes or is expressed from the salt.

The burden of proof that it was or was not a manufactured article was upon the importers, and having failed in this it is beyond the province of the court to so find. We think the record, unsatisfactory as it is, clearly establishes that the assessment by the collector was erroneous; that the article is either a nonenumerated manufactured or unmanufactured article; that there is not sufficient testimony in the record to determine whether it is one or the other. Accordingly the decision of the Board of General Appraisers is *reversed*. It would seem upon this record to be dutiable as a nonenumerated manufactured article.