ISHIMITSU CO. *v.* UNITED STATES (No. 2422).[1]

1. NIGARI NOT A MANUFACTURED ARTICLE.

Nigari, a by-product of the manufacture of salt from sea water, is not a manufactured article under paragraph 385, tariff act of 1913. Iwakami *v.* United States (5 Ct. Cust. Appls. 244; T. D. 34427) explained and distinguished.

2. NIGARI NOT A CRUDE MINERAL.

Crude implies that merchandise is raw, unprepared, or in its natural state. While it is true that sea water is a mineral, it is not true that nigari, a by-product of the manufacture of salt from sea water, is crude; and so it is not classifiable under the provision of paragraph 549, tariff act of 1913, for "minerals, crude, or not advanced in value or condition by refining or grinding, or by any other process of manufacture." No merchandise can be regarded as crude if it results from a manufacturing process and no further processing is necessary to fit it for its destined use.

---

[1] T. D. 40672.

3. NIGARI IS WASTE—ERROR MUST BE ASSIGNED.

    Nigari, a by-product of the manufacture of salt from sea water, is waste, under paragraph 384, tariff act of 1913. But, in the absence of any such assignment of error, the judgment of the Board of United States General Appraisers, classifying it as a nonenumerated unmanufactured article under paragraph 385, is affirmed.

## United States Court of Customs Appeals, February 4, 1925

APPEAL from Board of United States General Appraisers, Abstract 47186

[Affirmed.]

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellant.

*William W. Hoppin,* Assistant Attorney General (*Margaret M. Burnet,* special attorney, of counsel), for the United States.

[Oral argument Nov. 14, 1924, by Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

A Japanese product known as nigari, obtained in the process of salt making, is the subject of controversy in this case.

The process of salt making, described in the record, consisted of spreading sea water upon the level sand in the sun where the water evaporated, leaving a crust of salt. This operation is repeated until a thick crust is formed on the sand, and when so formed, is scraped off and boiled with sea water in pans for a day or more, after which the salt is placed in fine-meshed draining baskets which are suspended from the ceiling. As the moisture from the wet salt exudes it drips into pans and is then known as nigari. It is imported into this country to be used in the manufacture of tofu, a food made from the soy bean and eaten by the Japanese and Chinese. Nigari is a somewhat bitter substance, and only a small portion is used by mixing it with the beans. In the importer's brief it is stated that it is used to harden the tofu and is subsequently soaked out. It is imported into this country in the exact condition it is in at the time it drips into the pans. Apparently, in Japan it is of little value, and in the past has been given away.

It was assessed by the collector, under paragraph 385 of the tariff act of 1913, as an article "manufactured, in whole or in part," dutiable at 15 per cent ad valorem, in accordance with the decision in Iwakami & Co. *v.* United States (5 Ct. Cust. Appls. 244; T. D. 34427). The protest alleged it to be free under paragraph 549 of said act as a crude mineral substance; or, in the alternative, dutiable at 10 per cent ad valorem under paragraph 384 as waste, or under paragraph 385 as an unmanufactured article. The Board of General Appraisers held it not to be a crude mineral, and that it was an unmanufactured article.

The Iwakami & Co. *v.* United States case, supra, involved the same merchandise, and the question there was whether it was "mineral water" or whether it was an unmanufactured article or a nonenumerated manufactured article. Upon an incomplete and evidently an unusually 'unsatisfactory record the court held that the importation was not "mineral water." The court said that—

Some parts of the testimony would indicate it the product of methods devised and pursued for the express purpose of producing the imported article, whilst other portions of the testimony would indicate it a mere by-product or accidental incident to the manufacture of salt which has not undergone any manufacturing processes, but which is merely something which exudes or is expressed from the salt.

\* \* \* \* \* \* \*

We think the record, unsatisfactory as it is, clearly establishes that the assessment by the collector was erroneous; that the article is either a nonenumerated manufactured or unmanufactured article; that there is not sufficient testimony in the record to determine whether it is one or the other. Accordingly the decision of the Board of General Appraisers is reversed. It would seem upon this record to be dutiable as a nonenumerated manufactured article.

The decision of the court in the case above, in our judgment, is in no sense controlling in the case at bar. Here the testimony is reasonably clear as to the process of manufacture. It is shown in this case that the object of the manufacturing process is to produce salt and that the production of nigari is only an incident of the salt making; that in the production of the nigari there was no manufacturing effort put forth for the purpose of producing nigari. Under the decisions of this court, too numerous and too much in general agreement to require citation, we do not think the importation is a manufactured article.

The importer in urging that the nigari should be classified under paragraph 549 for "minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture," urges that water is a mineral and that salt is a mineral, and that the combination of both is a crude mineral.

It will be noted that in the process of manufacturing the salt, the salty residue, in the form of solids, is first collected from the sand; that this crust is then boiled in sea water for a day or two; that the salty solids are dipped out and put in baskets, suspended from the ceiling for the purpose of drying, and that a certain salty, bitter liquid drains off which is nigari. It is reasonable to presume that certain substances remain in the baskets which the nigari does not contain. It can not be said that the nigari contains all the ingredients of sea water after the sea water has been put through the process above described, and the solids extracted, nor can it be said that it aptly falls within the provisions of paragraph 549 for "minerals crude, or not advanced in value or condition by refining or grinding or by other process of manufacture." Crude implies that it is raw,

unprepared or in its natural state.—United States v. Danker & Marston (2 Ct. Cust. Appls. 522; T. D. 32251).

It is true that the above case holds that an article may be evolved as a result of a series of processes and manufacturing operations and still be in a crude state; but the same authority holds that if, when it evolves from that process, an additional manufacturing effort is required to prepare it for use, then only may it be regarded as crude. Nigari, when produced as a result of the salt manufacturing process needs no further process to prepare it for the one known use. It seems clear to us that if sea water is a mineral, crude, the importation, which is a residuum from a manufacture of sea water, is not crude; and this is especially apparent when we apply the doctrine of use.

We think the importation is waste. The Government, in order to sustain its position that it is a manufactured product, contends that it is a distinct commercial product, a by-product, "probably as valuable as the salt, and a valuable by-product has never been classified as waste." The record does not sustain this contention, but on the contrary shows that it is not a product of any manufacturing effort designed either to produce it as a primary product or as an equally valuable by-product. The record, we think, clearly shows that it is a thrown off incident of salt production and clearly comes within the facts and reasoning of Willits & Co. v. United States (11 Ct. Cust. Appls. 499; T. D. 39657). There the court said:

Ordinarily the term "waste" is applied to materials which are either entirely lost in some manufacturing operation or have become utterly useless and of no value. It is evident, however, that the word is not used in that sense in the tariff, since paragraph 384 imposes duty upon "waste, not specially provided for," at the rate of 10 per cent ad valorem. In the tariff sense therefore the word is applicable to materials which may possess commercial value and become articles of international trade. This is proven, furthermore, by the fact that in successive tariffs such articles as bagging, cork, cotton, flax, jute, linen, silk, and wool wastes, as well as others having well-known uses and values, have been enumerated either for duty or for free entry under the name of wastes.

*        *        *        *        *        *        *

The imported article, in fact, is refuse which is left over in the meat-packing industry; it is a material which is not susceptible of being used in the ordinary operations of a packing house; it is a final residuum remaining after all of the valuable elements for packing purposes have been extracted from it; it is not an article which is sought or purposely produced as a by-product in the industry; to the contrary, it is reduced in quantity to the lowest possible minimum as an unsought residuum; it has lost the quality and utility of meat both as a raw material and as a finished product, and the use to which it is finally put is foreign to the ordinary use of either raw or preserved meat.

Nigari, once valueless, becomes a waste product having commercial value.

While the importer claims, in his protest, that the importation was alternatively dutiable as waste, he has not raised that question

on the appeal to this court by proper assignment of error. The assignment is as follows:

As ground of error it is asserted that said board erred in not holding that said merchandise was free of duty under paragraph 549, tariff act of 1913, relating to crude minerals, etc.

No error is predicated upon the fact that the board held the merchandise dutiable as an unmanufactured article, nor is their failure to classify it as waste complained of in the assignment of error. While this court is not inclined to be technical or captious on questions of assignment of error, if proper claim was made in the protest, as is indicated in Bartley Bros. & Hall et als. *v.* United States (3 Ct. Cust. Appls. 363; T. D. 32961), it can not reverse the Board of General Appraisers for erroneous classification, where the proper classification is not pointed out, or the erroneous classification complained of in the assignment of error.—United States *v.* Georgia Pulp and Paper Manufacturing Co. (3 Ct. Cust. Appls. 410; T. D. 32998). We would be glad to ignore technical questions which do not go to the merits of the case, but the Government in its brief has pointedly called the matter to our attention, and we must not evade it.

The board erroneously classified the merchandise. It should have been classified as waste, but their judgment can not be successfully overthrown under the assignment of error before us, and is, therefore, *affirmed*.