CIA. ALGODONERA *v.* UNITED STATES (NO. 3865)[1]

United States Court of Customs and Patent Appeals, April 29, 1935

*Lawrence A. Harper* (*Abraham Gottfried* of counsel) for appellant.
*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *Daniel I. Auster,* special attorney, of counsel), for the United States.

[Oral argument April 17, 1935, by Mr. Lawrence; submitted on brief by appellant]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Two importations of cottonseed hulls were made at the port of Los Angeles, Calif., and the goods were classified by the collector at the port, in both instances, as waste, not specially provided for, under paragraph 1457 of the Tariff Act of 1922. The merchandise was claimed in the protest to be free of duty under paragraph 1560 of said act as cotton and cotton waste, as all other waste not specially provided for, under paragraph 1651, as vegetable substances, crude or unmanufactured, not specially provided for, under paragraph 1622,

---

[1] T. D. 47686.

as fertilizer, under paragraph 1583, or dutiable at 5 per centum ad valorem as cotton waste, under paragraph 901, all of said act.

In the trial court and here, the importer relied upon his claim under said paragraph 1622, and no attempt was made to establish the protest claim of the importer as to any other paragraph of the act. We shall therefore consider the competing provisions to be said paragraphs 1457 and 1622, which are as follows:

PAR. 1457. Waste, not specially provided for, 10 per centum ad valorem.

·PAR. 1622. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

In the trial court, two witnesses were called and examined by the protestant. From the testimony of these witnesses, it appears that cottonseed hulls are produced in the manufacture of cottonseed oil and meal. The witness Parker described the process of production of hulls as follows:

* * * The ordinary oil mill procedure is, the first thing that is received from the cotton gin is cleaned, the dirt is sifted out mostly through screening; then the part of the lint is removed from that, on the linting machine. Then they go through what is known as hulling and separating. They cut the seed all up fine and they go through a separating machine, which separates the inside granule, which contains the oil from the outer shell, which is called the hull. That is the procedure up to the point of the hulls production.

He further stated that practically all of the cottonseed hulls are used for cattle feed; that they are not further manufactured, and are taken from the mills to the feed yards, there mixed with meal in small percentages, and fed to cattle. Parker stated that these hulls constituted one of the "four major products of cotton seed." It is also shown that cottonseed hulls have always been a definite and well known article of commerce, with an established value.

The United States Customs Court overruled the protest, and from this judgment the importer has appealed.

It is claimed here that the imported goods are free of duty under said paragraph 1622, as crude vegetable substances, and not dutiable as waste. This contention is supported by the argument that—

if an article is a definite, sought-for major product of a milling process, representing one of the major products to be obtained therefrom, it cannot be considered a waste.

This argument is thought to be supported by such authorities as *Patton* v. *United States*, 159 U. S. 500, and the late decision of this court in *Borne Scrymser Co.* v. *United States*, 22 C. C. P. A. (Customs) 475, T. D. 47465. Again, the argument is made that the court below erred in refusing to follow a decision of the Board of General Appraisers, known as T. D. 14705–G. A. 2427, in which the board determined that cottonseed hulls imported under the tariff act of October 1, 1890, were crude vegetable substances as provided by paragraph

653 of the free list of said act, rather than dutiable as an unmanufactured article, not enumerated, under section 4 of said act. It is argued that there has never been any judicial decision to the contrary, and that, therefore, the construction made by the Board of General Appraisers should be controlling here. The general tenor of appellant's contentions is that the cottonseed hulls imported were not a by-product, were a valuable and well-known commercial product, and that the process of manufacture by which they were produced was one which had in mind four products, namely, linters, hulls, oil and oil cake meal, and that the imported goods cannot properly be considered as a waste.

The question of what does or does not constitute waste has been much discussed in tariff jurisprudence, and has many times engaged the attention of this court. Waste in earlier tariff acts was usually not considered as a dutiable commodity, but was relegated to the free list. However, waste not specially provided for ultimately found its place in duty provisions of the succeeding tariff acts. One of the earliest pronouncements on the subject was that found in *Patton* v. *United States, supra*, a case involving woolen waste, where it was observed by the Supreme Court, in discussing the meaning of the term "waste":

* * * The prominent characteristic running through all these definitions is that of refuse, or material that is not susceptible of being used for the ordinary purposes of manufacture. It does not presuppose that the article is absolutely worthless, but that it is unmerchantable and used for purposes for which merchantable material of the same class is unsuitable.

That case was written relative to importations under the tariff act of March 3, 1883.

Our earliest cases on the subject were *United States* v. *Hatters' Fur Exchange*, 1 Ct. Cust. Appls. 198, T. D. 31237, and *United States* v. *Salomon*, id. 246, T. D. 31277. In the first of these, clippings of rabbit skins were claimed to be waste and not dressed furs. We held that as these clippings were adaptable for use as dressed furs, they were not waste. In the second case, we held that cotton linters were not waste, but cotton.

In *Willits & Co.* v. *United States*, 11 Ct. Cust. Appls. 499, T. D. 39657, beef cracklings were imported, were classified as a nonenumerated manufactured article, and were claimed to be waste. It was shown that at meat packing establishments the scraps and refuse meat were cooked, subjected to hydraulic pressure to recover the grease, and the remaining cake was exported for use as chicken feed. We held the material to be properly dutiable as waste.

In *Ishimitsu Co.* v. *United States*, 12 Ct. Cust. Appls. 477, T. D. 40672, a Japanese product known as nigari was imported and classified as a manufactured article, and was claimed to be free as a crude mineral substance. It developed that the nigari was a by-product of

the process of making salt, but was valuable for purposes of making a sauce or relish for Chinese dishes. This court held that it was properly classifiable as waste.

Again we held, *Koons, Wilson & Co.* v. *United States*, 12 Ct. Cust. Appls. 418, T. D. 40589, that beet pulp, the dry residue from sugar beets after the sugar had been extracted, was dutiable as waste rather than free of duty as a crude or unmanufactured vegetable substance.

In *Chicago Mica Co. et al.* v. *United States*, 21 C. C. P. A. (Customs) 401 T. D. 46927, scrap mica was imported and was claimed to be waste. We held otherwise, on the theory that the material was mica "susceptible of being used for the ordinary purposes of manufacture."

A coarse, thick mineral oil, produced in distilling petroleum, was held to be not dutiable as a waste, but free of duty as a distillate obtained from petroleum, in *Borne Scrymser Co.* v. *United States, supra.* It started as a distillate obtained from petroleum, ended as a distillate obtained from petroleum, and, hence, was specifically included within the scope of the duty provision. It is not seen how this case is opposed to the views expressed by the court below in the case at bar.

Additional cases in point are *Salomon Bros. et al.* v. *United States*, 2 Ct. Cust. Appls. 431, T. D. 32196; *Kamikawa Bros.* v. *United States*, 15 Ct. Cust. Appls. 12, T. D. 42130; *United States* v. *Tower & Sons*, 17 C. C. P. A. (Customs) 90, T. D. 43427.

From a consideration of these authorities, we conclude that the classification of the goods here involved as waste is amply justified, not only by the facts appearing of record, but by the cases cited. The cottonseed hulls are a by-product of the oil mills, necessarily produced in such oil mill operations. The fact that they are a valuable product, and are a distinct commercial entity, does not militate against the view that they are, in a tariff sense, waste.

As to the claim that the trial court in this case should have followed T. D. 14705–G. A. 2427, in which merchandise, identical with that here imported, was held to be crude vegetable substances, it will be noted that, in that case, the competing provisions of the law covered unenumerated, unmanufactured articles on the one hand, and crude vegetable substances on the other. The question as to the dutiable character of the goods as waste was not, therefore, involved, and the case cannot be said to constitute a basis for the application of the rule of legislative ratification here.

Substantially the same remarks are applicable to T. D. 15376—G. A. 2770 and T. D. 15399–G. A. 2793, where oat hulls were involved, and in T. D. 18020, and T. D. 23431, 4 Treas. Dec. 989, involving pea hulls. T. D. 44980, *Ueland* v. *United States*, and T. D. 45221, *Berghausen Chem. Co.* v. *United States*, also cited by appellant, are thought to be not applicable to the present issue.

The judgment of the United States Customs Court is *affirmed.*