59 CCPA

**UNION CARBIDE INT'L, CO.**

v.

**The UNITED STATES.**

**Customs Appeal No. 5459.**

United States Court of Customs and Patent Appeals.

June 22, 1972.

Rode & Qualey, attorneys of record, for appellant; Ellsworth F. Qualey, New York City, of counsel.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, John V. Henry, New York City, for the United States.

Before RICH, ALMOND, BALDWIN, and LANE, Judges.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, Third Division, 66 Cust.Ct. 46, C.D. 4166 (1971), overruling appellant's protest against the classification under TSUS item 603.70 of certain "manganese nodules." We affirm.

### The Merchandise

The importation at bar consists of manganese nodules produced by high-temperature agglomeration of fine particles of manganese ore mined in Ghana and British Guiana. The agglomeration process (1) drives off water contained in the raw ore, (2) partially melts some of the ingredients of the ore, allowing the fine particles to be rolled together in a rotary kiln, and (3) upgrades the manganese content of the ore by reducing $MnO_2$ in the ore as found in nature to $MnO$, $Mn_2O_3$, and $Mn_3O_4$. The purpose of the agglomeration process is to make usable fine ore particles which otherwise would not work acceptably in the electrical furnaces used to produce ferromanganese, and the agglomerated nodules are used in the next step in the overall process leading to the ultimate production of ferromanganese in the same manner as naturally occurring chunks of ore of the same size.

### The TSUS Items Involved

The subject importations were classified under TSUS item 603.70 as "Other metal-bearing materials * * * Other * * * Other." They are claimed under TSUS item 601.27 as manganese ore. However, to be eligible for the latter classification, Headnote 2(a) to Schedule 6, Part 1, requires that the imports be either (1) crude or (2) concentrated by crushing, flotation, washing, or by other physical or mechanical separation processes which do not involve substantial chemical change. Appellant does not contend that the subject manganese nodules were concentrated by crushing, flotation, or washing, but it does contend that they were either in crude condition or were concentrated by a physical or mechanical separation process which did not involve substantial chemical change. Appellant does not contend that its manganese nodules are not described by the basket provision

under which they were classified. However, since item 601.27 is clearly more specific than item 603.70, if appellant's goods are also described by the claimed item, it will have carried its "dual burden" by one set of proofs. The facts concerning the importation are not in dispute, and only issues of law are involved.

### Opinion Below

After analyzing the opinion in United States v. C. J. Tower & Sons, 43 CCPA 49, C.A.D. 608 (1955), the Customs Court concluded that:

> * * * a concentrate, in the tariff sense, is the product of a process whereby the desired material has been separated from *a substantial portion* of the unwanted constituents * * *. [Emphasis ours.]

Applying this definition to the facts before it, the court held:

> The record establishes, and this is not controverted by defendant [sic; plaintiff?], that the processing of the fines into nodules did not involve removal of the gangue, or waste material. Therefore, whether or not the * * * [agglomeration] process involved substantial chemical change, that treatment did not constitute a concentration * * *. [Footnote omitted.]

In our opinion, as these excerpts indicate, the lower court did not clearly distinguish between two quite different concepts: first, that a process is not a concentration as far as this item of the TSUS is concerned unless it involves the separation of a *substantial portion* of the unwanted constituents of the raw ore, and, second, that the unwanted constituents separated from the raw ore must be gangue.

Turning to the importer's alternative contention, the court held that the imported nodules were not in a "crude" condition because, as a result of the agglomeration process, "the mineral no longer exists as found in its natural state * * *."

### The Parties' Arguments

Appellant's primary contention is that the nodules are "concentrated" within the meaning of that word in the statute and that the concentration was effected by a process which did not involve substantial chemical change. It points out that there is no requirement in the statute as to the percentage of unwanted materials that must be removed from raw ore before it may be classified as concentrate and argues that:

> All that is required in fact is an upgrading of the original material. The record shows that the manganese content was upgraded and water and oxygen removed (R 32, 33). Therefore the imported material is a concentrated ore.

It then goes on to argue that the chemical change involved in the concentration process was not a substantial one "because the material [i. e., the raw manganese ore] was not advanced chemically or metallurgically for its intended use * * *."

Alternatively, appellant contends that "it is logical to assume that if the processing * * * does not reach the level of a concentration then the nodules obtained in that processing must still be in a crude state." It cites United States v. Continental Color & Chemical Co., 2 Ct.Cust.App. 165, T.D. 31679 (1911), for the proposition that "an article may be obtained by manufacture and still be crude in a tariff sense," and it argues that the imported nodules, though obtained by manufacture, were still crude in the tariff sense because they were "in essentially the same condition as the larger pieces [i. e., those pieces of the manganese ore which were not subjected to the agglomeration process] chemically and metallurgically * * *."

The Government argues that:

> * * * the appellant failed to establish the threshold requisite [for classification as a concentrate], that the object of the [agglomeration] process was to upgrade a particular content in the material, which, in this instance,

would have been the manganese content of these ore fines. Upgrading a particular content of an ore means increasing the content of the thing which one is after *by removing as far as practical the undesirable elements of the raw material.* [Emphasis in original.]

Apparently the Government is here focusing on (and expanding considerably upon) the substantiality of concentration test set forth in the opinion of the Customs Court, but it also argues that appellant failed to prove that the agglomeration process concentrated the raw manganese ore "by failing to show that the process was aimed at removing gangue or waste material * * *."

Concerning the substantiality of the chemical change involved in the agglomeration process, the Government relies on F. B. Vandegrift & Co. v. United States, 38 Cust.Ct. 187, C.D.1861 (1957), which held that "a substantial chemical change" had occurred as the result of a process employing two chemical changes, the first of which seems to have been identical to the chemical change involved here. While the opinion does not expressly so state, the Government argues that "the emphasis placed by the Court upon the initial change would indicate that the initial change from $MnO_2$ to MnO, $Mn_2O_3$, and $Mn_3O_4$ by heating was regarded as a substantial chemical change."

Finally, the Government argues that the manganese nodules were not imported in a crude condition because they had "to go through no further process to ready them for their sole use—namely, to be used in the production of ferromanganese * * *."

## OPINION

### I. *Were the Importations Concentrated?*

We cannot agree with the Customs Court that "a substantial portion of the unwanted constituents" was not removed from the raw ore by the agglomeration process. According to the uncontroverted testimony of one of appellant's witnesses, the agglomeration process

* * * upgraded the manganese content * * * from approximately 36 per cent to 45 per cent, in the case of the British Guiana nodules or, from 50 per cent to 60 per cent in the case of the Ghana nodules.

As appellant has pointed out, the statute does not call for any particular degree of concentration, and we cannot regard a 10 or 11 per cent increase in concentration as de minimis, despite the further testimony of appellant's witness that:

This is not a degree of concentration, however, that is usually considered very great. In most metallurgical operations, you achieve more concentration than that.

The imported manganese nodules may not be highly concentrated, but the statute does not require that.

However, at least on the present record, we do agree with the Customs Court that the agglomeration process was not a concentration in the sense intended by the statute because it did not separate the manganese from the gangue. While appellant's trial counsel asked two of appellant's witnesses to define the term "concentrate" as it is used in mining and metallurgy, on appeal appellant has relied primarily on the many definitions of that term set forth in the opinions in United States v. C. J. Tower & Sons, 43 CCPA 49, C.A.D. 608 (1955), and Firth Sterling, Inc. v. United States, 48 CCPA 130, C.A.D. 779 (1961). Of these, we find the following, taken from the 1913 edition of Funk & Wagnall's New Standard Dictionary, particularly instructive:

*Concentrate,* [*v.*] * * * 2. *Chem.* To intensify in strength or to purify by the removal, as in evaporation, of valueless or unneeded constituents; condense, intensify. 3. *Mining.* To separate (ore or metal) from its containing rock or earth.

*Concentrate, n.* A product of a process of concentration, as in chemistry or *metallurgy*.[*]

By these definitions, the agglomeration process involved here (in which water was evaporated and oxygen, which was a "valueless or unneeded" constituent of the ore, was driven off by the application of heat) was undoubtedly a concentration in the chemical sense, but it was not a concentration in the more restricted sense in which the word is apparently used in the mining industry because it did not separate the manganese from the gangue.

Turning to the particulars of this case, as the Customs Court specifically found, "The record establishes * * * that the processing of the fines into nodules did not involve removal of the gangue, or waste material." (Footnote omitted.) Accordingly, the agglomeration process did not concentrate the importations in the sense of that word as used in the statute, and we therefore need not decide whether that process involved a "substantial chemical change."

## II. *Were the Importations Crude?*

■ The cases discussed in the opinion of the lower court and in the Government's brief here do nothing if they do not indicate considerable confusion in the law concerning what is and what is not in "crude" condition in the tariff sense. About the best we can do at this late date is to quote again Judge, later Presiding Judge, DeVries's often-quoted declaration that "The term 'crude,' as used in tariff legislation, is a relative term, its meaning depending upon its use in the context." United States v. Richard & Co., 8 Ct.Cust.App. 304, 305, T.D. 37583 (1918). Thus, we must do

our best to apply a relative, and rather indefinite, term to the facts of this particular case, conscious always that, generally speaking, the word "Crude implies that it [i. e., the subject merchandise] is raw, unprepared or in its natural state." Ishimitsu Co. v. United States, 12 Ct. Cust.App. 477, 479–80, T.D. 40672 (1925).

The lower court quoted extensively from Fynaut & Popek v. United States, 23 CCPA 265, T.D. 48112 (1936), wherein it is said that this court had "repeatedly held that an article may be crude in a tariff sense, although it has undergone some processes advancing the article from its natural state, *provided that such processes do not fit the article for its ultimate use.*" Id. at 269; emphasis ours. But what is the "ultimate use" of these manganese nodules? After they are imported, they are used in the production of ferromanganese, and the ferromanganese is then used as an alloying ingredient in the production of steel. Nevertheless, our precedents do hold that importations can be crude in the tariff sense although they have undergone some processes advancing them from the natural state, provided that they have not been advanced too far, realistically and commercially speaking.

■ In this case, the Customs Court found that "It is an inescapable conclusion that the mineral no longer exists as found in its natural state and that *a change of this kind is not unsubstantial.*" (Emphasis ours.) In fact, the change that it had undergone (from finely divided particles of ore containing mostly $MnO_2$ to agglomerated nodules of ore containing mostly $MnO$) was necessary to make the importation usable in the next step of the process leading to

---

* One of appellant's witnesses defined the term "concentrate" as it is used in metallurgy as "a material that is obtained by treating an ore by mechanical means to remove gang[ue] or unwanted materials." A second defined the term "as applied to ores" to mean something "made for the purpose of eliminating certain undesirable ingredients in the ore at a point preferably near the mining operation, so as to cut down on the cost of shipping," but he did not specify what he meant by "certain undesirable ingredients."

Another of the definitions quoted in the *Firth Sterling* opinion is "to separate metal ore from the gangue or associated rock."

the "ultimate use" of the manganese, whatever that might be. The evidence is clear that, without the step of agglomeration, the manganese fines were totally unsuitable for use in the production of ferromanganese. We certainly cannot say that the Customs Court erred in terming such a change "not unsubstantial," and we accordingly affirm its holding that the importation was not of "crude" manganese ore.

For the foregoing reasons, we affirm the judgment of the Customs Court.

Affirmed.

BALDWIN, J., concurs in the result.