VANDEGRIFT & CO. *v.* UNITED STATES (No. 2416) [1]

PARAGRAPHS 34 AND 1567, TARIFF ACT OF 1922—DRUGS OF ANIMAL ORIGIN, CRUDE AND ADVANCED—CATTLE GLANDS.

Certain inedible portions of cattle, such as glands, were imported, dried and ground, for the purpose of extracting medicine from them. They are drugs of animal origin, classifiable under paragraph 34, Tariff Act of 1922, if advanced, and under free-list paragraph 1567 if not. With the evidence showing that no way of transporting them was practicable except ground and dried, and that the ground and dried merchandise was less desirable than when fresh or frozen or dried whole, they must be held "not advanced in value or condition * * * beyond that essential to the proper packing * * * and the prevention of decay or deterioration pending manufacture." Accordingly they are classifiable under paragraph 1567.

United States Court of Customs Appeals, April 20, 1925

APPEAL from Board of United States General Appraisers, G. A. 8772 (T. D. 40109)

[Reversed.]

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellants.
*William W. Hoppin*, Assistant Attorney General (*Anthony J. Argondizza* and *Reuben Wilson*, special attorneys, of counsel), for the United States.

[Oral argument March 25, 1925, by Mr. Tompkins and Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:
Certain ovarian and pituitary cattle glands and different organs of cattle imported from the Argentine, South America, by H. K. Mulford & Co., of Philadelphia, and used by them in the manufacture of solutions for hypodermic injection were classified under paragraph 34 of the act of September 21, 1922, at 10 per centum ad valorem as a drug of animal origin advanced in value or condition by grinding.

Paragraph 34 is as follows:

Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; any of the

---

[1] T. D. 40865.

foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 10 per centum ad valorem: *Provided,* That the term "drug" wherever used in this act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: *And provided further,* That no article containing alcohol shall be classified for duty under this paragraph.

The importers protested, claiming them free of duty as crude drugs of animal origin, dried only for the purpose of transportation, under paragraph 1567 of said act, which is as follows:

Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, logs, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; all of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, and are in a crude state, not advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture: *Provided,* That no article containing alcohol shall be admitted free of duty under this paragraph.

The majority opinion of the Board of General Appraisers, by General Appraisers McClelland and Sullivan, overruled the protest and sustained the classification of the collector. General Appraiser Brown dissented, taking the position that the protest should have been sustained and the merchandise held free of duty under paragraph 1567.

The record discloses that the glands and different organs in controversy were natural, uncompounded, nonedible drugs of animal origin. The proof shows that by process of extraction certain active principles desired by the drug manufacturers are taken from the fresh glands after one hour's immersion by soaking and using extreme heat, and that the fresh gland, undried and unground, is the most desirable form of the merchandise for this purpose; that the only way the fresh glands can be transported from the Argentine is in cold storage, where the glands are frozen, and that they must be kept frozen after transportation until used. The testimony shows that refrigerating space can not be had when desired and that the only other practical method of transporting the crude drug containing the active principles desired, is by drying and grinding the glands and transporting the dried glands in the powdered form.

Only one witness testified before the board. He, for 12 years, had been a pharmacist with H. K. Mulford & Co., and had had charge of the manufacture of all importations similar to the one in question. He testified that the fresh or frozen gland was most desirable and the drying and grinding of it occasioned them 10

times more work than would be necessary if the fresh gland was used; that one hour's soaking was sufficient for the fresh gland while it took 10 hours to soak the dried ground gland, and that, in soaking the dried ground gland, a gelatinous matter accumulated not desired for medicinal purposes, the elimination of which occasioned the expenditure of a great amount of time and actual labor.

The testimony shows that 1 pound of the dried ground gland is worth as much, or contains as much of the desired principle, as 6 pounds of the frozen gland, which is, no doubt, due to the fact that, in the drying process, the greater portion of the bulk of the gland is eliminated as water. The witness testified that they had never been able to transport the dried gland except when preserved by the use of boric acid, but that the importation, when so preserved, showed signs of mold and was not satisfactorily preserved, and that the boric acid system was not a success; that it took out the more active principles. The testimony does not disclose why the grinding of the dried gland was essential to the preparation or preservation while being transported, but the testimony is clear and undisputed that the drying and grinding is only for the purpose of transportation and preservation pending manufacture. It may be assumed that the grinding of the dried gland is a part of the process of further drying so as to prevent mold or deterioration. It seems clear that grinding would facilitate drying.

Evidently the majority opinion rested upon the belief that the dried gland would not be an advanced drug within the meaning of the paragraph, but that the grinding of the dried gland was a process which advanced it beyond that which was essential to the proper packing of the drug and the prevention of decay or deterioration pending manufacture.

The proof shows that if the gland was dried, before the manufacturer could extract the principles, it must be ground. If the whole dried gland could be satisfactorily preserved without grinding it would seem that the grinding process would be an advancement bringing the commodity within paragraph 34, but as this record appears before us the proof shows that the gland is not imported in its dried condition except ground, and that attempts to import the dried unground gland were unsuccessful. It is clear that the drying is not an advancement, and in the record before us we think it appears that the grinding is a part of the process of preparation essential to the prevention of decay or deterioration pending manufacture. It may be a fact that the gland as a whole can be dried and satisfactorily transported to this country in its whole dried condition. If the record so showed we would be inclined to hold that

the grinding would be an advancement taking it out of paragraph 1567, but in this record the contrary appears.

Since the board's decision in the case at bar, it has passed upon the same merchandise in *Parke, Davis & Co.* v. *United States,* T. D. 40475, G. A. 8887. This decision has been cited by the appellants to support their contention in this case. The Government insists that the Parke-Davis case, supra, does not support the appellants' contention, for the reason that in that case there was no grinding process. The processes to which the importation in that case was subjected and which were held necessary for preservation are not outlined in the decision and we are therefore not in a position to determine whether or not the case is in point.

The case of *Frankfeld & Co.* v. *United States,* 7 Ct. Cust. Appls. 296, T. D. 36805, which was distinguished in the Parke-Davis case, supra, held certain pituitary glands of calves, imported for the purpose of making a watery liquid hypodermically injected in obstetric work, were not dutiable as drugs, for the reason that they were not named in the paragraph and were not like any of the things that were named. In the Parke-Davis decision, supra, the board correctly distinguished the Frankfeld & Co. case, supra, by citing the fact that in the Tariff Act of 1922 the phrase "and all other drugs of vegetable or animal origin" had been added to the provisions contained in the act of 1913 under consideration in the Frankfeld case.

It is not questioned in this case that the glands, either fresh or ground, are drugs, the only question being have they been advanced beyond that condition essential to the proper prevention of decay or deterioration pending manufacture?

The collector should have classified the merchandise under paragraph 1567. The judgment of the Board of General Appraisers sustaining the collector's assessment under paragraph 34 is *reversed.*