MASSON *v.* UNITED STATES (No. 2840)[1]

United States Court of Customs Appeals, April 16, 1927

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter* and *Reuben Wilson*, special attorneys, of counsel), for the United States.

[Oral argument March 17, 1927, by Mr. Tompkins and Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellant imported in barrels the merchandise involved, which is known as cottonseed pitch or distilled stearine pitch. Stearine pitch is a name for all grades of fatty acid pitches which are usually of animal or cottonseed origin. It is made from black cotton grease, which grease is a residue from milling processes in making cottonseed oil. The black grease is put into a still and is blown with a heat of

1 T. D. 42157.

about seven or eight hundred degrees for the purpose of driving off and recovering the fatty acids or soap stock. The residue from the still is drawn off while it is hot and is the merchandise at hand. It is chiefly used in this country in the manufacture of flexible conduit compounds, battery cell compounds, paints, varnishes, and roofing material. It is never used alone but is used with other materials.

The importation was assessed with duty by the Baltimore collector at 20 per centum ad valorem under paragraph 1459 of the Tariff Act of 1922 as a nonenumerated manufactured article, in whole or in part. The protest claims the merchandise to be dutiable at 10 per centum ad valorem under paragraph 1459, as an unmanufactured nonenumerated article and as waste not specially provided for under paragraph 1457. Other claims were made but not urged here.

The Customs Court overruled the protest, and in doing so used the following language:

The record shows that cottonseed fatty acids were quoted in the United States markets about the time of importation of the merchandise in question at approximately 9¾ cents per pound, and the invoices in these cases show that the merchandise at bar was sold at about 4 cents per pound. It would seem that bearing so high a ratio in value to the main product the merchandise in question can not properly be regarded as waste. See Patton v. United States (159 U. S. 500), and Latimer v. United States (223 U. S. 501; T. D. 32299).

While fatty-acid pitches are variable in quality and lack uniformity, the testimony shows that they are always salable, and form a substantial portion of the return obtained from the processing or distillation of black cotton grease. In the merchandise here in question it appears the pitch was sold at a price approaching one-half the value of the main product.

The importer appealed to this court and here relies upon its claim that the merchandise is waste. The Government urges that—

Trade or commercial circumstances takes the merchandise in question out of the provisions of "waste" and places it as a commodity of particular value and demand—

and that the trial court was correct in holding that the merchandise was not waste since the value of the same was too high in comparison with the value of the main product, which was fatty acids.

The testimony in the case shows clearly that the pitch is a residue and final left-over product in the process of extracting the fatty acids or soap stock from the black grease; that the main product, and the product which the manufacturer hopes to get in the greatest possible quantity from his process, is fatty acid, and that he gets what he can for the waste. The testimony shows that there is no uniformity in the chemical composition of different pitches from different stills, and that some are of little or no value, while the products of other stills sell for from 4 to 9¾ cents per pound, and that the pitch which comes from a given quantity of black grease is worth from one-quarter to nearly one-half of the value of the fatty acids obtained.

At the outset it will be observed that the trial court regarded the value of the pitch, when compared with the value of acids, as wholly controlling in its determination as to whether it was or was not a waste, the inference being that had the pitch been of considerably less value it would have been regarded as a waste.

Regardless of how much weight is to be given the comparative values of the refuse and the main product, resulting from a manufacturing effort, in determining whether or not imported merchandise is or is not waste, in a tariff sense, we do not think that it is controlling or conclusive. The values of the products may strongly indicate which is the main product and which is the refuse and a consideration of such comparative values may be helpful in determining that there is no waste or refuse product resulting from the process. In our judgment it would be a dangerous rule to say that a given refuse material may be declared not to be waste solely upon the ground that its value approximated too closely the value of the main product. If this rule was to obtain, a thing might be waste to-day and something else to-morrow, which would lead inevitably to confusion and uncertainty in commercial transactions as well as in the collection of customs duties.

During the greater part of our national existence, waste has been the subject of international commerce, and Congress, during all that time, has seen fit to recognize it as of such value as to place upon it various rates of duty. The common meaning of the word according to most modern dictionaries means "Something rejected as worthless or not needed; surplus or useless stuff; especially, the refuse of a manufacturing process or industrial art." The Government has quoted one such definition in its brief in this case, and cites *Patton* v. *United States*, 159 U. S. 500, and *Latimer* v. *United States*, 223 U. S. 501 (which were also cited by the trial court), and urges that these cases support the position that the value of the pitch alone prevents it from being classifiable as waste.

A careful examination of the two cases last cited, in our judgment, does not sustain the contention of the Government. The *Patton* case involved goods entered as wool waste at 10 cents per pound, which the appraiser returned for duty as scoured wool, broken tops, class 1, at 60 cents per pound. The case turned largely upon the proposition that wool tops had been broken up into waste for the purpose of making waste, and that such an intentional manufacture of waste did not constitute the kind of waste provided for by Congress. In the opinion of the court, in discussing rags, shoddy, mungo, and flocks, which it states are similar to waste, it is said:

The prominent characteristic running through all these definitions is that of refuse, or material that is not susceptible of being used for the ordinary purposes of manufacture. It does not presuppose that the article is absolutely worthless, but that it is unmerchantable and used for purposes for which merchantable material of the same class is unsuitable.

The court then proceeds to show that the importation did not possess the quality pointed out in the definition in so far as it was susceptible of being used for the ordinary purposes of manufacture, and said:

It is, however, used like other scoured wool, being mixed with it in the carding machine, and is worth only ten or fifteen cents less per pound than scoured wool of the same character.

Now, let us apply this doctrine to the case at bar. The pitch is no longer black grease, nor is it fatty acid, nor can it be used for any of the purposes that any of the things from which it came were suitable.

In the *Latimer* case the court had under consideration small pieces of tobacco broken from the brittle leaves in the manufacturing and handling of the same, which, in the process, fell upon the floor of the warehouse or factory. The scraps were swept up and, when cleaned, were used in the manufacture of a cheap grade of cigarettes and stogies. The court held the merchandise to be unmanufactured tobacco, and speaking of "waste," said:

The word as thus used generally refers to remnants and by-products of small value that have not the quality or utility either of the finished product or of the raw material. *Patton* v. *United States*, 159 U. S. 500, 503. But the scrap here involved retains the name and quality of tobacco. It is tobacco, and as such it is used for making cigarettes and stogies.

Let us apply that rule to this case. There it was tobacco when reclaimed from the floor of the factory. It was tobacco when it was remanufactured into cigarettes and stogies. In the case at bar, the refuse material possesses none of the qualities which characterized any of the commodities from which it was derived, nor is the pitch used for any of the purposes for which the original materials were used.

We think the following cases support and control the issues involved in the case at bar: *Willits & Co.* v. *United States*, 11 Ct. Cust. Appls. 499; *Gudewill & Bucknall* v. *United States*, 142 Fed. 214; *Darling & Co.* v. *United States*, 12 Ct. Cust. Appls. 86; *Koons, Wilson & Co.* v. *United States*, 12 Ct. Cust. Appls. 418; *United States* v. *Crompton & Son*, 6 Ct. Cust. Appls. 197; *Ishimitsu Co.* v. *United States*, 12 Ct. Cust. Appls 479; and *Kamikawa Bros.* v. *United States*, 15 Ct. Cust. Appls. 12, T. D. 42130.

In the *Willits* case, *supra*, this court had under consideration beef cracklings, which were the final residue of the packing plant, and which were used, after importation, for chicken feed mixed with other material. We, there, laid down the following definition of waste:

Ordinarily the term "waste" is applied to materials which are either entirely lost in some manufacturing operation or have become utterly useless and of no value. It is evident, however, that the word is not used in that sense in the tariff,

since paragraph 384 imposes duty upon "waste, not specially provided for," at the rate of 10 per cent ad valorem. In the tariff sense therefore the word is applicable to materials which may possess commercial value and become articles of international trade. This is proven, furthermore, by the fact that in successive tariffs such articles as bagging, cork, cotton, flax, jute, linen, silk, and wool wastes, as well as others having well-known uses and values, have been enumerated either for duty or for free entry under the name of wastes.

The court then quotes the definitions of waste as laid down in the *Patton* case, *supra*, and holds that the beef cracklings answer to the definitions of waste enunciated in the foregoing authority, and said:

The imported article, in fact, is refuse which is left over in the meat-packing industry; it is a material which is not susceptible of being used in the ordinary operations of a packing house; it is a final residuum remaining after all of the valuable elements for packing purposes have been extracted from it; it is not an article which is sought or purposely produced as a by-product in the industry; to the contrary, it is reduced in quantity to the lowest possible minimum as an unsought residuum; it has lost the quality and utility of meat both as a raw material and as a finished product and the use to which it is finally put is foreign to the ordinary use of either raw or preserved meat. The article, furthermore, was not processed after it became a waste, as in the case of Malouf *v.* United States (1 Ct. Cust. Appls. 437; T. D. 31502). These incidents serve to distinguish the present case, from those relating to materials which, while low grade, nevertheless continue to possess the characteristics of their original estate, as in the cases above cited, and also from those relating to valuable by-products which are designedly sought as desirable subsidiary products in manufacturing operations.

Everything said there about beef cracklings can be said here with equal force concerning cottonseed pitch.

In *Darling & Co., supra*, and *Koons, Wilson & Co., supra*, we followed the *Willits* case. The *Darling* case involved tankage and the *Koons, Wilson & Co.* case involved beet pulp. In the latter case the competition was between vegetable substances, crude or unmanufactured, and waste not specially provided for. The pulp residue from the ground beet from which the juice is taken was dried and ground and was used for cattle feed. Following the reasoning in the *Willits* case, the court held the beet pulp to be waste.

In *Gudewill & Bucknall, supra*, the merchandise consisted of small pieces of cork which had been produced by grinding the refuse of cork bark for convenience in handling, and was held to be waste notwithstanding that as waste it still was cork.

In the *Crompton & Son* case, *supra*, short broken warp ends of jute thread used in the manufacture of burlap cloth were held to be waste, notwithstanding the fact that they partook of the nature of the material from which they were derived.

It is very earnestly urged that imported merchandise of such high value should not be permitted to be classified as waste, at 10 per centum ad valorem, since Congress must have meant to include within the term only such articles as have little or no value. Valuable wastes are found on the free list, and many articles far more

valuable per pound than the instant merchandise are also free of duty.

The waste provision contended for by importer is for waste not specially provided for. There are many different kinds of waste specially provided for in the Tariff Act of 1922, and in many previous tariff enactments. The attention of Congress is frequently called to different wastes, which, by reason of manufacturing development and other causes, have become more valuable than they were originally, with the result that such wastes as Congress deems to be the proper subjects for tariff treatment, other than that provided for in the n. s. p. f. provision, are specially dealt with. Changing commercial and manufacturing conditions, competition, and other considerations may suggest to Congress the advisability of specially dealing with cottonseed pitch. It may then see fit to specifically provide for it as it has with wool waste, cotton waste, silk waste, rope waste, bagging waste, and many other kinds of waste. Solely on account of the value of the cottonseed pitch we are asked to declare a thing not a waste which is, in fact, a waste under all the recognized definitions of the term, when used in a tariff sense. We do not feel called upon, by judicial construction, to perform the function that Congress has always shown itself to be well able to perform when the need for action was pointed out.

The judgment of the United States Customs Court is *reversed*.