UNITED STATES *v.* HALF MOON MANUFACTURING & TRADING CO.
(No. 3993)[1]

---

[1] T. D. 48668.

United States Court of Customs and Patent Appeals, November 9, 1936

*Joseph R. Jackson*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

*Pickrell & McDonald* for appellee.

[Oral argument October 13, 1936, by Mr. FitzGibbon and Mr. McDonald]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, holding certain imported merchandise, consisting of dried and ground "vegetable albumen", dutiable at 10 per centum ad valorem as waste, not specially provided for, under paragraph 1555 of the Tariff Act of 1930, rather than at 20 per centum ad valorem as a nonenumerated manufactured article under paragraph 1558 of that act, as assessed by the collector at the port of New York.

The paragraphs in question read:

PAR. 1555. Waste, not specially provided for, 10 per centum ad valorem.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The only testimony of record is that of appellee's witness, C. P. J. Stam, of the Kingdom of the Netherlands, managing director of the foreign producer of the involved merchandise. He testified that his company is engaged in the production of starch from wheat flour; that, in order to obtain starch,

wheat flour, is mixed with water and kneaded, and afterwards the starch is washed out in a washing machine. The protein however, during the washing process, remains in the washing machine, and after the starch has been entirely washed out, the remaining protein is dried and ground and constitutes the merchandise sold by us under the name of Vegetable Albumen;

that the imported merchandise is an unsought refuse or residue resulting from the production of starch from wheat flour; that it has no use or value in the production of starch; that it is not produced nor purposely sought as a by-product; that it is reduced in quantity to the lowest possible minimum consistent with the production of starch of merchantable quality; that it does not have any of the uses, qualities, or properties of wheat flour, nor of starch; that it is—

dried and ground in order to preserve same from deterioration. The drying is necessary in order to prevent fermentation and the grinding is necessary in order to prevent undue absorption of atmospheric moisture and to facilitate the packing of the commodity for transportation;

that such drying and grinding processes do not change the character of the vegetable albumen in any manner; and that the relative percentage of value of the starch produced compared to the residue is: Starch 77½ per centum, vegetable albumen 22½ per centum.

The Government introduced no evidence, and there is nothing of record to contradict the testimony of appellee's witness.

The trial court, in an opinion by Keefe, Judge, Cline, Judge, concurring, fully set forth the evidence in the case, and held that, under the facts of record, the merchandise came squarely within the definition of waste heretofore announced by the Supreme Court, and by this court; that, in view of the fact that the drying and grinding processes did not convert the residue into a new and different article having a new name and use, but merely prevented fermentation and deterioration, and facilitated its packing and transportation, it was a waste and dutiable as such under paragraph 1555, *supra.*

It is contended here by counsel for the Government that the involved merchandise is not a waste; that the court below failed to "distinguish between a by-product necessarily resulting from the manipulation of a raw product and a waste material." Counsel further argue that—

The record herein shows that if the protein residue were not immediately dried it would become useless by reason of fermentation. It therefore follows that the drying process changes the merchandise from what would become a worthless waste into a merchantable commodity. The merchandise is also ground to prevent absorption of moisture. Since the moisture causes fermentation the grinding is also necessary to change what might become waste into a merchantable commodity. * * * In the case at bar the protein substance remaining in the washing machine is not a waste as it is a merchantable commodity with a distinctive name and use.

Although the position of counsel for the Government, as stated in their brief, is not entirely clear to us, we think it is that the residue remaining in the washing machine after the starch had been "washed out" was not a waste, but, on the contrary, a manufactured by-product, but that, if it were a waste in its original condition, it was converted into a new article of commerce by the drying and grinding processes to which it was subjected. Certainly, the assignments of error are sufficient to raise both of those issues.

In support of the latter contention, counsel for the Government rely upon the decisions of this court in the cases of *United States* v. *Wilfred Schade & Co.*, 16 Ct. Cust. Appls. 366, T. D. 43092; *United States* v. *Geo. S. Bush & Co. (Inc.) et al.*, 16 Ct. Cust. Appls. 406, T. D. 43131; *Chicago Mica Co., et al.* v. *United States*, 21 C. C. P. A. (Customs) 401, T. D. 46927, and the decision in the case of *United States* v. *George Meier & Co.*, 136 Fed. 764.

In view of the conclusion we have reached, we deem it unnecessary to discuss the second issue raised by counsel for the Government,

but content ourselves with the citation of authorities wherein that subject was fully considered: *Gudewill & Bucknall* v. *United States*, 142 Fed. 214; *Koons, Wilson & Co.* v. *United States*, 12 Ct. Cust. Appls. 418, T. D. 40589; *Vandegrift & Co.* v. *United States*, 13 Ct. Cust. Appls. 30, T. D. 40865; *United States* v. *Albers Bros. Milling Co. and Geo. S. Bush & Co.*, 19 C. C. P. A. (Customs) 88, 91, T. D. 45226.

We will proceed, therefore, to consider the first issue raised by counsel for the Government; that is, that the residue remaining in the washing machine prior to the drying and grinding processes to which it was subjected was a manufactured by-product, and not a waste.

The chief constituents of wheat flour are "starch, gluten, water, fat, and ash." See Webster's New International Dictionary.

It is clear from the record that the testimony of the witness Stam related solely to the production of starch from wheat flour by his concern. He stated that the involved merchandise was not purposely produced as a by-product, but, on the contrary, was reduced in quantity to the lowest possible minimum consistent with the manufacture of starch. He described the foreign manufacturer's process of producing starch in most general terms, and stated that the residue was protein, which was sold as vegetable albumen. Although he did not testify that the so-called vegetable albumen or protein was gluten, he did not testify that it was not, and we think it is clear, from the authorities hereinafter cited, that it was, in fact, gluten.

"Gluten" is defined in Webster's New International Dictionary as follows:

\* \* \* The viscid, tenacious substance which gives adhesiveness to dough, esp. that made from wheat flour. *It is regarded as the product of the interaction, in the presence of water, of gliadin and glutenin, which occur separately in the grain. Gluten is a very nutritious element of food. It may be separated from flour by washing out the starch and other soluble matters in a current of water.* [Italics ours.]

"Glutenin" is a protein. See Webster's New International Dictionary.

"Gliadin" is also a protein. See Thorpe's Dictionary of Applied Chemistry, Vol. V, page 465.

In Thorpe's Dictionary of Applied Chemistry, Vol. III, at page 429, we find the following:

Gluten in the form of a light-brown powder, dried at a low temperature, is a commercial product, being used for the manufacture of bread and biscuits for diabetic patients: it usually contains from 3 to 5 p. c. of starch, and sometimes a great deal more, and should yield a very tough elastic dough when wetted.

*In the commercial process the flour is made into a stiff dough, placed in open kneading machines, and kneaded with water. The starch goes into suspension, the starch milk being strained off periodically until gluten alone remains in the machine.*

The open kneading machine most used for the process consists of a trough in which two kneading arms work in opposite directions. [Italics ours.]

Thorpe's Dictionary of Applied Chemistry, Vol. VI, pp. 368 and 369, also describes in considerable detail the processes and apparatus used in the manufacture of starch, and, in explaining the so-called "Martin's process," states that wheat flour is used, and, "For the separation of the starch from the gluten," an elaborate apparatus is used. We deem it unnecessary to describe the apparatus.

We think it is clear, from the authorities cited, that, either in the manufacture of starch or in the manufacture of gluten, substantially the same process and apparatus are used, and that they are used for the same purpose and with the same result; to wit, the separation of those two constituents—starch and gluten—of wheat flour, each of which is sought for its valuable properties and produced for its various uses.

We do not question the statement of the witness that his concern, engaged in producing starch, actually sought starch, not gluten. The mere fact, however, that his company did not seek the gluten produced by it, does not establish that other manufacturers might not. In view of the character, value, and importance of gluten, the process and apparatus by which it, together with starch, is produced, it is unthinkable that they would not. Obviously, the merchandise ought not to be held dutiable as a "waste", in the case at bar, because the manufacturer preferred starch, and dutiable as a nonenumerated manufactured article in a case in which it appears that it was purposely produced.

It is true that the involved merchandise does not have all of the qualities of the wheat flour from which it was produced, but neither does starch. Each, however, has some of the qualities, if not the precise uses, of such flour.

We are of opinion that the involved merchandise is not a "waste", within the purview of the decisions of this court in the cases of *Willits & Co.* v. *United States*, 11 Ct. Cust. Appls. 499, T. D. 39657; *Masson* v. *United States*, 15 Ct. Cust. Appls. 78, T. D. 42157; *Harley Co.* v. *United States*, 14 Ct. Cust. Appls. 112, T. D. 41644, but, on the contrary, is a manufactured by-product, within the principles announced by this court in the cases of *American Smelting & Refining Co.* v. *United States*, 12 Ct. Cust. Appls. 212, T. D. 40226; *American Smelting & Refining Co.* v. *United States*, 16 Ct. Cust. Appls. 46, T. D. 42718.

It appears from the decision of the trial court, and no contention is made here to the contrary, that counsel for appellee abandoned all of the claims made in its protest, except the claim that the merchandise in question was a waste, or, alternatively, a nonenumerated raw or unmanufactured article, under paragraph 1558, *supra*.

It is clear from what has been said that the involved merchandise is not a raw or unmanufactured article.

For the reasons stated, the judgment is *reversed*.