F. W. Myers & Co., Inc. *v.* United States (No. 4327)[1]

---
[1] C. A. D. 167.

*Barnes, Richardson & Colburn (Joseph Schwartz of counsel) for appellant.*
*Charles D. Lawrence,* Acting Assistant Attorney General (*Joseph F. Donohue,* special attorney of counsel), for the United States.

[Oral argument February 4, 1941, by Mr. Schwartz and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges [2]

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, in a suit against the United States brought by appellant to recover money alleged to have been illegally exacted by the Collector of Customs as customs duty on an importation of frozen beef livers. The merchandise came into the United States at the port of Rouses Point, N. Y., and was there entered by appellant, a customs broker.

The collector assessed duty at 6 cents per pound under the provisions of paragraph 706 of the Tariff Act of 1930 reading as follows:

PAR. 706. Meats, fresh, chilled, frozen, prepared, or preserved, not specially provided for, 6 cents per pound, but not less than 20 per centum ad valorem.

The appellant claimed the merchandise to be free of duty under the provisions of paragraph 1669 of the said act, which reads:

PAR. 1669. Drugs such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, logs, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, *and all other drugs of* vegetable or *animal origin; all the foregoing which are natural and uncompounded drugs and not edible,* and not specially provided for, and are in a crude state, not advanced in value or condition by shredding, grinding, chipping, crushing, or· any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture: *Provided,* That no·article containing alcohol shall be admitted free of duty under this paragraph. [Italics, except last word, supplied.]

Appellant also made an alternative claim for assessment at 10 per centum ad valorem under paragraph 34 of the same act, which provides for drugs, advanced. This claim was not relied on below and the protest, insofar as it related to such claim, was overruled, and apparently the ruling was acquiesced in.

The case was tried at the ports of New York City and Rouses Point. The government tendered no testimony. The record contains the testimony of three witnesses who appeared on behalf of appellant, together with several exhibits of the medicinal products made from such beef livers.

[2] LENROOT, Judge, took no part in the consideration or decision of this case.

There is no controversy concerning the facts in the case. It appears that the involved merchandise, consigned to the Bronx Refrigerating Co. in New York City, came from the abattoir of Canada Packers, Ltd., in Montreal, Canada, and was imported for use by the Lederle Laboratories, Inc., located at Pearl River, N. Y. The Lederle Corporation engages in the manufacture of liver products used in the treatment of pernicious anemia and products containing vitamins, some of which are obtained from liver. The shipment of beef livers weighed 15,895 pounds and was invoiced as "Frz. Beef Livers," under which description was the notation "Beef Livers For Medicinal Purposes Only." On the consumption entry there is a notation that the goods involved were "Frozen beef livers, inedible and unfit for human consumption (for medicinal purposes only)." Attached to the official papers is a certificate concerning the merchandise executed by an inspector of the Department of Agriculture of the Dominion of Canada, reading as follows:

I, G. T. Labelle hereby certify that the following described shipment consists of carcasses, portions or products which are inedible and unfit for food; that this was obtained from animals that were free from Contagious Disease as dealt with under The Animal Contagious Diseases Act, and that the containers in which such carcasses or products are being transported are marked in accordance with the requirements of the regulations.

For the reason that the merchandise was not imported for food purposes, the Bureau of Animal Industry of the United States Department of Agriculture permitted it to be delivered without inspection.

It appears that before shipment of meat exported from Canada a pure food "sticker" is applied to the package and a certificate issued covering the number of the "sticker" signed by an inspector of the Department of Agriculture, stating that the meat was properly prepared under sanitary conditions. It was not necessary to observe these requirements with respect to the involved merchandise.

It appeared that there was no difference between the livers imported for medicinal use and those imported for use as food. Both were healthy beef livers; both were prepared and frozen in the same manner for preservation and shipment. Apparently had it been so desired the frozen beef livers of the importation could have had the necessary certification that is required in the case of beef livers for food purposes. The sole difference in status between the imported goods and livers imported for food purposes is that the former could not be legally imported and merchandised as food, in the absence of pure food certificates from Canada and inspection in the United States.

The goods herein were shown to have been used by the Lederle Laboratories in the manufacture of their said products and for no other purpose.

The appellant contended the involved merchandise should not have been classified as "Meats * * * frozen * * * not specially provided for," for the reason that the sale or use of it as food would have been in violation of law and that therefore the frozen beef livers were not edible and that they were crude drugs, as claimed. It was not urged that the goods were not otherwise fit to be consumed as food by human beings.

In support of its contention, appellant relied upon a line of cases which decided the dutiable status of certain animal glands imported into the United States for the purpose of manufacturing medicinal preparations.

The trial court, in its decision herein, analyzed the testimony in considerable detail, held that:

So far as the record shows these beef livers are "fit to be eaten as food" as imported and such beef livers are habitually so eaten. The intimation that, due to certain statutory restrictions imposed by Canada on food products for export, they would not be merchantable as food, does not, in our view, affect the edibility of the product but rather the salability. They have not been rendered unfit to be eaten as food by any process either natural or as the result of manufacturing.

and accordingly rendered judgment overruling the protest.

The contention here is the same as that urged upon the trial court, and the only issue before us is whether or not the imported merchandise is an inedible drug.

Clearly, beef liver is not a drug. It is meat and was so held by this court in *United States* v. *Swift & Co.*, 13 Ct. Cust. Appls. 542, T. D. 41428. That it possesses therapeutic properties and that the chief and only use of the merchandise herein was for therapeutic or medicinal purposes is not questioned. Even assuming that it were a drug, certainly, on the record, the imported beef liver is fit to be eaten as food. Its edibility is not questioned by appellant, except as hereinbefore set out.

There is nothing in the record which even by inference can sustain the contention of appellant that the imported merchandise is an inedible drug. On the contrary, the evidence clearly shows that the imported beef livers are edible, even though it was necessary to comply with certain formalities if they were exported as food. The fact that the exporter did not seek to follow the necessary routine mentioned with respect to the certification of products intended for food purposes does not, of itself, render the goods any the less edible.

To sustain its contention appellant cited the following cases: *Vandergrift & Co.* v. *United States*, 13 Ct. Cust. Appls. 30, T. D. 40865; *Frankfeld & Co.* v. *United States*, 7 Ct. Cust. Appls. 296, T. D. 36805; and *Parke, Davis & Co.* v. *United States*, T. D. 40475, 46 Treas. Dec. 353. In none of these cases does the record show that the various glands which constituted the merchandise involved were

edible in the common meaning of that term, and therefore the cases are not applicable to the instant case.

It does not seem logical to us that, as the appellant argues, there is a distinction between meat which is edible in fact and meat which is edible only by reason of law. The word "edible" was defined by this court in the case of *United States* v. *Yick Shew Tong Co.*, 25 C. C. P. A. (Customs) 255, T. D. 49392, and we think the definition given there applies to that term as it is involved here. In that case the court said:

\* \* \* The word edible, we think, must be given its common meaning and construed in the sense of its ordinary use and acceptance. Webster's New International Dictionary gives the adjective meaning of the word as "Fit to be eaten *as food;* eatable; esculent; as, *edible* fishes." [First italics ours.]

The definitions by other authorities are of the same purport; that given by the Century Dictionary and Encyclopedia reads:

*Edible*—1. a. Eatable; fit to be eaten as food; esculent; specifically applied to objects which are *habitually* eaten by man, or *specifically* fit to be eaten, among similar things not fit for eating; as edible birds' nests; edible crabs; edible sea-urchins. \* \* \* [Italics new here.]

Since it is clear to us that the beef liver here is of the same class and kind as beef liver consumed as meat food in the United States, in our opinion the specific purpose for which the merchandise was imported and the use to which it was put furnish no basis for holding that the classification as made by the collector is erroneous.

The judgment of the United States Customs Court is *affirmed.*