U. S. VITAMIN CORP. *v.* UNITED STATES (No. 4843)[1]

United States Court of Customs and Patent Appeals, January 20, 1956

*Michael Stramiello, Jr.*, for appellant.

*Warren E. Burger*, Assistant Attorney General and *Richard E. FitzGibbon,* Chief, Customs Section for the United States.

[Oral argument October 6, 1955, by Mr. Stramiello and Mr. FitzGibbon]

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, rendered pursuant to its decision C. D. 1664, overruling the protest of the importer and sustaining the action of the Collector of Customs in classifying certain imported merchandise as a drug in advanced condition, dutiable under paragraph 34 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. It was asserted in the protest that the merchandise should be classified as a drug in a crude state, under paragraph 1669 of the Tariff Act.

The pertinent paragraphs are as follows:

Par. 34. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 5 per centum *ad valorem; provided*, That the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes; *And provided further*, That no article containing alcohol shall be classified for duty under this paragraph.

Par. 1669. Drugs such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, logs, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin;

all the foregoing which are natural and uncompounded drugs and not edible, and not especially provided for, and are in a crude state, not advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture; *Provided*, That no article containing alcohol shall be admitted free of duty under this paragraph.

The merchandise is a dried, ground, beef liver extract. The process by which it is made is described in a deposition of one Dr. F. F. Nicola Orsini, introduced by appellant, which reads:

Livers from young and healthy bovines are ground and mixed with water. The mixture is then adjusted to the isolectric point (pH$^4$ .5–5) and heated to about 85° C, to coagulate protein. The liquids of the extractions are cooled down to separate the fat and filtered. The filtrate is reduced in vacuum to pasty consistency. The resulting concentrate is spread on pans and dried in vacuo and after being removed from the drier it is ground to the proper fineness. It may also be dried directly with a Spray-Drier.

The record in *United States* v. *Judson Sheldon Corp.*, 33 C. C. P. A. (Customs) 73, C. A. D. 318, involving beef liver extract in paste form, has been incorporated in the present record. The relation between the paste of that case and the powder of the instant one is succinctly brought out in the following quotation from the present record:

Judge Mollison: What are the processes, the additional processes and treatments to which the imported merchandise was subjected beyond and in addition to the processes and treatment that was used in the Judson Sheldon case?
Mr. Weil: Vacuum drying and grinding into a powder.
Judge Mollison: Is there any dispute about that matter?
Mr. Stramiello: No.

In the *Judson Sheldon* case it was held that liver paste, shipped under refrigeration at 40° F., was a drug in a crude state. The correctness of that holding is not questioned here. It is conceded by the importer that the grinding process to which the paste of the *Judson Sheldon* case is subjected in producing the powder of the present case is an advancement within the meaning of paragraphs 34 and 1669 of the Tariff Act, but the importer contends that such advancement is not "beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture." The soundness of that contention is the sole issue to be determined here.

It is stated in the importer's brief that it has never contended and does not now contend "that when beef liver extract in paste form is refrigerated, the loss of the desired ingredient is so substantial that the product is unusable or damaged, or that the extraction of the desired element is not feasible."

On the other hand, the instant record clearly will not support a holding that the paste can be safely shipped without refrigeration.

On the contrary, the statement of the witness Klein in the *Judson Sheldon* case that the paste "can come in at a temperature of 40 degrees Fahrenheit, that is, above freezing, just so long as it is cool," clearly shows that refrigeration of the paste is necessary.

The disposition of this appeal, therefore, depends upon whether the drying and grinding of a paste which can be satisfactorily shipped, commercially, under refrigeration, in order to permit shipment without the necessity of refrigeration, constitutes an advancement in condition "beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture."

It is evident that the key word in the expression just quoted is "essential." That word, as noted by the lower court, is defined in Webster's New International Dictionary, 1933, as follows:

* * * 3. ⸱ Important to the highest degree; indispensable to the attainment of an object; indispensably necessary. ⸱

Similarly, in Funk and Wagnalls New Standard Dictionary, 1925, "essential" is defined as:

* * * 2. ⸱ Indispensable; necessary or highly important, as to success or completeness; absolutely requisite; cardinal; as impartiality is essential to a judge.
That only is *essential* to life which is common to all forms of life.
Jas. Orton *Comparative Zoology* p. 43.

The quoted definitions represent the ordinary meaning of the word "essential" and there is nothing to indicate that any other meaning was intended by Congress in the passage here under consideration. It is clear from those definitions that "essential" means something more than convenient, desirable, or preferable.

It follows from the foregoing that the drying and grinding steps to which the merchandise here involved has been subjected are not essential to proper packing nor to the prevention of decay or deterioration pending manufacture, since it is conceded that such prevention may be alternatively effected by refrigeration, and since the record shows that substantial quantities of beef liver extract have been imported without such grinding or drying.

The circumstances of this case differ from those of *Vandegrift & Co.* v. *United States*, 13 Ct. Cust. Appls. 30, T. D. 40865, cited by the importer, in that the testimony there showed that shipping under refrigeration was not practicable, wherein in the present case it is. In the *Vandegrift* case this court stated:

* * * If the whole dried gland could be satisfactorily preserved without grinding it would seem that the grinding process would be an advancement bringing the commodity within paragraph 34, but as this record appears before us the proof shows that the gland is not imported in its dried condition except ground, and that attempts to import the dried unground gland were unsuccessful.

It follows from the quoted language that the instant merchandise falls within paragraph 34, *supra*, since the record clearly shows that

the beef liver extract here involved may be, and has been, satisfactorily preserved and imported without grinding.

Our decision in the *Judson Sheldon* case was based on the holding that the paste there involved represented the simplest form in which shipment was practicable, and that the unground livers could not feasibly be shipped because of lack of shipping facilities and refrigerator space. It was noted that the unground material could be shipped only when frozen and required fifteen times as much space as the paste, which required cooling only to 40° F. The decision in that case, therefore, is similar in effect to that in the *Vandegrift* case.

A further case in point here is *United States* v. *R. Hillier's Son Co., Inc.*, 16 Ct. Cust. Appls. 103, T. D. 42762, which involved a powder produced from the bark of a tree. In that case it was said:

> The record now before us, as has been stated, discloses that the material in question here can be, and is, imported as bark, and that the form in which we now find it is not necessary for the prevention of decay or deterioration pending manufacture. This being the test imposed by the statute, it can not be held to be crude.

The language just quoted is equally applicable to the present case, wherein the record shows that the beef liver extract can be, and is, imported as a paste.

It is ably argued by appellant that since drying and grinding constitute one process of preventing decay or deterioration of the paste, and refrigeration is another process for accomplishing the same result, some processing of the paste is necessary and, accordingly, whichever process is selected should be regarded as essential. That argument might be persuasive if each of the alternative processes for preparing the merchandise for shipment involved an advancement in value or condition of the paste. Refrigeration, however, does not advance the paste in any way but merely retains it substantially in its original condition. Since it is thus possible, by a conventional expedient, to prevent decay or deterioration of the paste without any advancement in value or condition, it cannot properly be said that the process of drying and grinding is essential to such prevention.

Appellant has assigned errors in two rulings of the Customs Court as to admissibility of evidence. In the first ruling questioned, that court sustained an objection to the following question asked of the plaintiff's witness Gunsberg:

> Q. What was the condition of the merchandise in paste form to which you referred when it arrived in this country?

Objection was made and sustained on the ground that the witness had no first hand knowledge as to how the paste referred to was made, and his answer would, therefore, be immaterial to the issues of the case. Thereafter both opposing counsel and the court inquired of the witness as to the same matter, without objection.

The other ruling as to which error was assigned was the striking by the court, on objection by Government counsel, of a volunteered statement by the witness in answer to the court's inquiry as to whether certain importations of liver extract paste had been used. The witness answered that they had not, and added that this was because they were found unsuitable and had to be destroyed. The latter part of the answer was stricken.

Since the condition of liver extract paste after shipment is clearly pertinent to the issues in this case, we are of the opinion that the matters in question should not have been excluded. However, in the view we take of the case, with particular reference to the testimony contained in the incorporated *Judson Sheldon* case on the same questions, the rulings complained of were not materially prejudicial to appellant, and, therefore, not sufficient to require reversal.

For the reasons given, we conclude that the importation here involved has been advanced in condition beyond what is essential to proper packing and the prevention of decay or deterioration within the meaning of the statute. The collector and the Customs Court, therefore, properly held the drug to be dutiable under paragraph 34, *supra*.

The judgment appealed from is *affirmed*.

JOHNSON, Judge, concurs in the conclusion.

Cole, Judge, having participated below, disqualified himself to sit in this case and JACKSON, Judge, retired, was recalled to participate herein.