. WILLITS & CO. *v.* UNITED STATES (No. 2213).[1]

1. WASTE.

Ordinarily the term "waste" is applied to materials which are either entirely lost in some manufacturing operation, or have become utterly useless and of no value. It is evident, however, that the word is not used in that sense in the tariff act, since paragraph 384, tariff act of 1913, imposes duty upon "waste, not specially provided for." In the tariff sense, therefore, the word is applicable to materials which may possess commercial value and become articles of international trade. This is proven furthermore by the fact that, in successive tariff acts, such articles as bagging, cork, cotton, flax, jute, linen, silk, and wool wastes, as well as others having well-known uses and values, have been enumerated either for duty or for free entry under the name of waste.

2. BEEF CRACKLINGS.

Beef cracklings, the residuum from the recovery in meat-packing houses of the tallow from refuse meat by heat and pressure, a hard cake which is broken up and ground for use as chicken feed, is classifiable as waste under paragraph 384, tariff act of 1913, rather than as a nonenumerated manufactured article under paragraph 385.

United States Court of Customs Appeals, May 24, 1923.

APPEAL from Board of United States General Appraisers, Abstract 45284.

[Reversed.]

*Frank L. Lawrence (Martin T. Baldwin* of counsel) for appellants.
*William W. Hoppin,* Assistant Attorney General (*Bernard Hahn,* special attorney, of counsel), for the United States.

[Oral argument March 21, 1923, by Mr. Hoppin.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

MARTIN, Presiding Judge, delivered the opinion of the court:

The appraiser described the importations as follows:

The merchandise covered by this protest consists of beef cracklings. It is the refuse or waste that remains after the tallow has been cooked out of the meat. It is used here as a part of manufactured chicken feed.

This brief description of the merchandise is substantially correct. It appears from the uncontradicted testimony in the case that in the operation of meat-packing houses in South America, as in this country also, there remains a considerable amount of refuse meat, consisting of pieces of lungs, hearts, udders, livers, and similar scraps, which can not be used as material in the ordinary operations of such a plant. This scrap material, however, contains a substantial and

---

[1] T. D. 39657.

valuable proportion of grease or tallow, which may be recovered from it by means of heat and pressure.   Accordingly it is first cooked in large tanks and the grease skimmed off, and the residue is then subjected to powerful hydraulic pressure which recovers as far as possible the grease remaining in it.   The substance which then remains is left in the form of large compacted cakes just as they come from the press, and these constitute the merchandise which is now in question. In this country the imported cakes are first broken into pieces with hammers and chisels, and then ground in large mills just as bones are ground.   The resulting product is sold here for chicken feed, and for that purpose it is generally but not always mixed with other materials.

The importation thus described was classified for duty by the collector as a nonenumerated manufactured article within the purview of paragraph 385 of the tariff act of 1913.   It was accordingly assessed with duty at the rate of 15 per cent ad valorem under that paragraph.   The importer protested against the assessment, claiming among other things that the merchandise was dutiable at only 10 per cent ad valorem as "waste, not specially provided for," under paragraph 384 of the same act.   The board overruled the protest and the importer appealed.

We think that the conceded facts in the case sustain the claim that the imported material is a "waste, not specially provided for," and that it is not dutiable as a nonenumerated article.

The record contains no testimony tending to establish a peculiar commercial definition of the word "waste"; the word must accordingly be interpreted in its usual or ordinary signification, reference being had, nevertheless, to its context in the act and to relevant judicial decisions concerning it.

Ordinarily the term "waste" is applied to materials which are either entirely lost in some manufacturing operation or have become utterly useless and of no value.   It is evident, however, that the word is not used in that sense in the tariff, since paragraph 384 imposes duty upon "waste, not specially provided for," at the rate of 10 per cent ad valorem.   In the tariff sense therefore the word is applicable to materials which may possess commercial value and become articles of international trade.   This is proven, furthermore, by the fact that in successive tariffs such articles as bagging, cork, cotton, flax, jute, linen, silk, and wool wastes, as well as others having well-known uses and values, have been enumerated either for duty or for free entry under the name of wastes.

In Patton v. United States (159 U. S. 500, 503) various definitions of "waste" are discussed by the Supreme Court, and the following conclusion is given:

The prominent characteristics running through all these definitions is that of refuse, or material that is not susceptible of being used for the ordinary purposes of manufac-

ture. It does not presuppose that the article is absolutely worthless, but that it is unmerchantable and used for purposes for which merchantable material of the same class is unsuitable.

In the case of Latimer *v.* United States (223 U. S. 501, 503) the same court, when defining the word "waste," says:

The word as thus used generally refers to remnants and by-products of small value that have not the quality or utility either of the finished product or of the raw material.

In the two cases just cited the respective materials in question, to wit, certain refuse wool and tobacco left over from the manufacture of standard products, were denied classification as "waste" under the act, since both articles were nevertheless capable of use as low-grade materials for the manufacture of inferior wool and tobacco products. To the same effect see United States *v.* Fur Exchange (1 Ct. Cust. Appls. 198; T. D. 31237); United States *v.* Salomon (id. 246; T. D. 31277); Salomon Bros. & Co. *v.* United States (2 Ct. Cust. Appls. 431; T. D. 32196).

A material of a different kind came before the Circuit Court, Southern District of New York, in Gudewill & Bucknall *v.* United States (142 Fed. 214), in which case Judge Platt held that the term waste was applicable to small pieces of cork, averaging a little larger in size than an ordinary grain of corn, produced by grinding the refuse obtained in trimming cork bark in the process of fitting it for baling, the object of the grinding being that it might be shipped more conveniently, the product being used in the manufacture of linoleum, of insulating material, and for various other purposes, it requiring further preparation when used in the manufacture of linoleum.

In United States *v.* Crompton & Sons (6 Ct. Cust. Appls. 197; T. D. 35442), certain short warp ends of new jute yarns thrown off during the process of weaving, and again used after manipulation for the purpose of weaving blankets and carpets, were held by this court to be dutiable as a waste not specifically provided for, under paragraph 384, tariff act of 1913.

We think that the present merchandise answers to the definitions of waste enunciated by the foregoing authorities. The imported article, in fact, is refuse which is left over in the meat-packing industry; it is a material which is not susceptible of being used in the ordinary operations of a packing house; it is a final residuum remaining after all of the valuable elements for packing purposes have been extracted from it; it is not an article which is sought or purposely produced as a by-product in the industry; to the contrary, it is reduced in quantity to the lowest possible minimum as an unsought residuum; it has lost the quality and utility of meat both as a raw material and as a finished product, and the use to which it is finally put is foreign to the ordinary use of either raw or preserved meat. The article, furthermore, was not processed after it became a waste,

as in the case of Malouf *v.* United States (1 Ct. Cust. Appls. 437; T. D. 31502). These incidents serve to distinguish the present case from those relating to materials which, while low grade, nevertheless continue to possess the characteristics of their original estate, as in the cases above cited, and also from those relating to valuable by-products which are designedly sought as desirable subsidiary products in manufacturing operations.

We conclude, therefore, that the protest should have been sustained and the merchandise assessed at 10 per cent ad valorem as "waste, not specially provided for," as aforesaid, and the decision of the board is accordingly *reversed.*