The judgment of the United States Customs Court is *reversed.*

UNITED STATES *v.* GEO. S. BUSH & CO. (INC.) ET AL. (No. 3082) [1]

United States Court of Customs Appeals, November 30, 1928

*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham* and *Fred J. Carter,* special attorneys, of counsel), for the United States.

*Frank L. Lawrence* (*Martin T. Baldwin* and *Samuel M. Richardson* of counsel) for appellees.

[Oral argument October 9, 1928, by Mr. Carter and Mr. Richardson]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The imported merchandise herein, the classification of which is in controversy, in two of the protests involves the whole of dogfish, ground into meal, and in the other two protests the merchandise consists of the entire dogfish, pressed into a more or less cake form. The merchandise in cake form was classified by the collector as "Waste, not specially provided for," under paragraph 1457 of the Tariff Act of 1922, at 10 per centum ad valorem, while the meal was classified as a nonenumerated, wholly or partly manufactured article, under para-

[1] T. D. 43131.

graph 1459 of said act, at 20 per centum ad valorem. The appellees claimed free entry under paragraph 1583 as manure, paragraph 1575, as "Fish imported to be used for purposes other than human consumption," paragraph 1629, as "Oil cake and oil-cake meal," or, if dutiable, under paragraph 1457 as waste, not specially provided for, at 10 per centum ad valorem, or under paragraph 1459 as a nonenumerated article at 10 or 20 per centum ad valorem.

The record shows that the whole dogfish, head, tail, entrails, and all, is steam-cooked for several hours under a high temperature; the excess moisture in the fish is evaporated and drawn from the cookers by a semivacuum caused by a fan. After the fish has been thoroughly cooked and the moisture content reduced to a point somewhat under 10 per centum, it is then placed into press cars, put under hydraulic pressure, and the oil is pressed out of the cooked fish. After the oil is pressed out, it is then in the so-called cake form. The cakes are flat and irregular in size, because they have the tendency to break up into large pieces. The meal is produced from a further processing by grinding the cakes.

In *United States* v. *Wilfred Schade & Co.*, 16 Ct. Cust. Appls. 366, T. D. 43092, we had before us cod-liver oil-cake meal which was made by grinding the cakes which were the residue of cooked cod livers after the oil had been drawn off. In that case we held that the importation was not fish under paragraph 1575, nor oil-cake meal under paragraph 1629, but that it was dutiable as a nonenumerated manufactured article under paragraph 1459. We held that, in the common understanding, oil-cake meal was meal, not of animal origin, and was confined to the residue of vegetable seeds from which the oil had been expressed. Everything we said there as to the common meaning of the term applies here. In that case, as in this one, the importer attempted to prove that, within the commercial understanding, oil-cake meal and oil cake included meal and cake produced from the residue of fish or parts of same.

In this case, as in the *Wilfred Schade & Co. case, supra,* importers attempted to prove commercial designation. The testimony is long and voluminous. Many objections to and criticisms of the same have been offered. The court below considered this phase of the case and, in its decision, said:

It was sought to be shown that the merchandise herein was understood in the trade as included in the terms oil cake and oil-cake meal, but the protestants failed to show that such commercial designation was definite, uniform, and general, and the testimony, in fact, shows that if such commercial designation obtained to any extent, it was partial, local, or personal, and therefore insufficient to establish commercial designation as defined in *Tower & Sons* v. *United States,* 11 Ct. Cust. Appls. 261, T. D. 39080.

We will not discuss the different phases of the commercial testimony offered, except to say, as the court below said, that if any proper commercial designation tending to support the contention of importers was proven, it was not shown that this designation was uniform, definite, general, and not local or personal. Certainly, the testimony is not of such character as would justify us in saying that the finding of the court below was clearly contrary to the weight of the evidence.

According to the testimony, that portion of the United States in which the dogfish meal and dogfish cakes in controversy were sold by importers was in Washington and Oregon and "up and down the Pacific coast and in the Orient," and that this was the entire territory in which the commercial meaning for the term "oil cake and oil-cake meal" was attempted to be established. It is at once apparent that this territory embraced only a very small portion of the United States. It is not shown that oil cake and oil-cake meal were not sold in other portions of the United States, nor, for that matter, does the record show that so-called oil cake and oil-cake meal of animal origin were not sold in other portions of the United States. It will not be necessary for us to consider what effect in the decision of this case is to be given to the failure of importers to show that oil cake and oil-cake meal, regardless of their origin, were not sold elsewhere.

Agreeable to the holding of the court below, we therefore hold that the importers failed in their attempt to show that their merchandise should be classified under paragraph 1629 as oil cake or oil-cake meal on account of commercial designation. The merchandise involved herein, not being oil cake or oil-cake meal, either commonly or commercially so known, can not be classified under paragraph 1629.

In this case, as in *United States* v. *Wilfred Schade & Co., supra,* we hold that the merchandise is not fish under paragraph 1575.

It can not fall under paragraph 1583, since there is no proof that it is used for manure but is used solely as chicken feed.

The cakes are waste and dutiable at 10 per centum ad valorem under paragraph 1457. *Willits & Co.* v. *United States,* 11 Ct. Cust. Appls. 499, T. D. 39657. The meal is waste, manufactured, and, therefore, is a nonenumerated manufactured article and dutiable at 20 per centum, under paragraph 1459. *United States* v. *Wilfred Schade & Co., supra.*

The judgment of the United States Customs Court is *reversed* and the cause *remanded* for further proceedings not inconsistent with the views herein expressed.