UNITED STATES *v.* GEO. S. BUSH & CO., INC., and WILBUR-ELLIS Co. (No. 3991)[1][2]

United States Court of Customs and Patent Appeals, December 21, 1936

*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *John F. Kavanagh*, special attorneys, of counsel), for the United States.

*Lawrence & Tuttle* (*Frank L. Lawrence* of counsel) for appellees.

[1] T. D. 48755.
[2] See 25 C. C. P. A. (Customs), T. D. 48775.

[Oral argument October 12, 1936, by Mr. Folks and Mr. Frank L. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding certain so-called "fish meal" free of duty as "Fish imported to be used for purposes other than human consumption" under paragraph 1575 of the Tariff Act of 1922, as claimed by the importer, rather than dutiable at 20 per centum ad valorem as a non-enumerated manufactured article under paragraph 1459 of that act, as assessed by the collector at the port of Seattle, Wash.

It was alternatively claimed in the protests, among other things, that the merchandise was free of duty as "guano" under paragraph 1583 of that act, and that claim is relied upon here, although the court below held that the involved merchandise was not within the common meaning of that term, and that appellees failed to establish that it was "guano" within the commercial understanding of that term.

Paragraphs 1459 and 1583, *supra*, read:

PAR. 1459. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1583. Guano, basic slag, ground or unground, manures, and all other substances used chiefly for fertilizer, not specially provided for: *Provided,* That no article specified by name in Title I shall be free of duty under this paragraph.

On the trial below considerable evidence was introduced by the parties, including the record in the case of *Wilbur-Ellis Co. et al.* v. *United States,* 18 C. C. P. A. (Customs) 472, T. D. 44762, which was made a part of the record in the case at bar.

It appears from the record that the involved fish meal was imported to be used as feed for live stock and chickens, and also as fertilizer, and that it was not imported for human consumption. It further appears from the record that it is produced in the following manner: Fish, first boiled to break down the cellular structure, is pressed through either a screw, hydraulic, or "expeller" type press to express the oil therefrom, and the residue is ground into meal.

The witnesses for the importers testified positively that the two products—fish oil and the residue—were joint or co-products; that the material from which the oil was expressed was not a mere waste; and that the fish oil represents from $\frac{1}{2}$ to $\frac{2}{3}$ of the total value of the two products.

It is conceded by counsel for the importers that at the time of its importation—1928 and 1929—the chief use of the imported merchandise was that of animal and chicken feed.

It clearly appears from the record, as stated in the decision of the trial court, that at the time of, and immediately prior to, the enactment of the Tariff Act of 1922, fish meals were used both for feeding and fertilizer purposes, the higher grade being used for feeding, and the lower grade for fertilizer.

The trial court was of opinion that the record was insufficient to establish that fish meal, of the kind and character here involved, was either known as "guano" or used chiefly as a fertilizer at the time of, or immediately prior to, the enactment of the Tariff Act of 1922, although fish meals of a lower grade, which were used exclusively as fertilizer, were known by a variety of terms, including "fish guano." The court was further of opinion that merchandise of the character of that here involved was not included within the common meaning of the term "guano", as used in paragraph 1583, supra.

Although we have examined the record with care, we are unable to find any evidence whatsoever to establish that at the time of, or immediately prior to, the enactment of the Tariff Act of 1922, or at any other time, fish meal of the character and class of that here involved was definitely, uniformly, and generally sold and dealt in in the trade throughout the United States as "guano." · [Italics ours.] Accordingly, unless the involved merchandise comes within the common meaning of that term, as used in paragraph 1583, supra, it is not free of duty as such. See United States v. Wilfred Schade & Co., 16 Ct. Cust. Appls. 366, T. D. 43092.

And so the question is presented as to whether the involved merchandise is "guano," within the common meaning of that term. The trial court, after considering various definitions of the word "guano" and the evidence in the case, was of opinion that it was not.

We are in entire accord with the court's decision in that regard, and we deem it unnecessary to enter upon a lengthy discussion of that issue here. We think it is sufficient to say that "guano" is now, and always has been, essentially a fertilizer, not a feed; whereas, fish meal, of the class and quality here involved, may have been, and may now be, used either as a feed or as a fertilizer, but, according to the manifest weight of the testimony, it is essentially a feed, and was used as animal and chicken feed prior to the enactment of the Tariff Act of 1922.

We come now to the final question in the case, that is, whether the imported merchandise is fish imported for purposes other than human consumption, within the purview of paragraph 1575, supra, as held by the trial court, or whether, due to the processing hereinbefore related, it is a nonenumerated manufactured article, as assessed by the collector.

It is the position of counsel for appellees that, although fish is manufactured into two substances—fish oil, which, of course, is not fish, and a so-called fish cake, which is later ground into meal—the latter,

stated by appellees' witnesses to be a co-product or joint product with the fish oil, is nothing more nor less than fish.

It seems to us that a mere statement of the proposition proves its fallacy.

It is true that the Tariff Act of 1922 contains provisions for fish in a variety of forms and conditions, and that the provisions of paragraph 1575, *supra*, might include *fish* in its various forms, even in the form of meal, a question which we do not decide here, so long as it is imported for purposes other than human consumption. However, the *eo nomine* provision is for fish, not for the involved processed material made therefrom.

We think that, had the Congress intended to provide that fish meal unfit for human consumption, the kind here involved, should be admitted free of duty under the Tariff Act of 1922, it would have said so, as it did in paragraph 1780 of the Tariff Act of 1930.

Accordingly, in view of the record in the case, we are constrained to disagree with the views expressed by the trial court that the involved fish meal is *mere fish* imported for purposes other than human consumption.

We are of opinion that the involved merchandise is neither "guano" nor "Fish imported for purposes other than human consumption", but, on the contrary, was properly classified by the collector as a nonenumerated manufactured article under paragraph 1459, *supra*. *United States* v. *Geo. Bush & Co., Inc., et al.*, 16 Ct. Cust. Appls. 406, T. D. 43131; *Wilbur-Ellis Co. et al.* v. *United States, supra*.

We find nothing in the legislative history that would warrant any conclusion other than that herein reached.

For the reasons stated, the judgment of the trial court is *reversed*.