(C. D. 662)

W. R. GRACE & Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 8, 1942)

*Puckhafer, Rode & Rode* (*Howard C. Carter* of counsel) for the plaintiffs.
*Paul P. Rao*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: There was imported into the port of New York a quantity of what is described on the invoices as ivory nuts, waste, which the collector of customs assessed at 7½ per centum ad valorem under the provision for waste, not specially provided for, in paragraph 1555 of the Tariff Act of 1930 as modified by the trade agreements between the United States and Canada (T. D. 49752) and the United Kingdom (T. D. 49753).

The importer filed suit claiming that the goods are properly free of duty under the *eo nomine* provision in paragraph 1778 of the same law for tagua nuts.

A hearing was held at the port of entry and the plaintiffs, who were the importers of the merchandise, introduced the testimony of one witness in support of their claim. This witness, who stated that he was familiar with the importations and had seen the commodity at the time of its arrival in this country, produced samples which were marked as illustrative exhibits. Illustrative exhibit A represented goods described more particularly on the invoice covered by protest 41934–K, entry 746286, as "Picos"; illustrative exhibit B represented the merchandise described on the same entry as "Aserrin"; illustrative exhibit C, the merchandise described as "Ojales"; and illustrative exhibit D, the whole nut. The last-named exhibit is not involved in this suit. No sample was produced of the goods described on the entry enumerated, as "Viruta." The witness stated that "Viruta" means "shavings" and that in size the pieces of that merchandise were finer than those in illustrative exhibit A and coarser than those in illustrative exhibit B.

This witness testified that tagua nuts are a form of vegetable ivory. He described the process to which tagua nuts are subjected as follows:

The nuts are sawed into what we call slabs, just thin slabs, about the thickness of a button, and then the button is subsequently cut from the slab.

In answer to a question as to whether anything had been added to or taken away from the tagua nuts to get them in the form of illustrative exhibits A, B, and C, he stated that the button had been taken but that no element had been removed from the material itself nor had anything been added. The witness also stated that with the exception of one small parcel, all of this merchandise that had been brought into the country by this importer for the past 9 years had been sold to "DuPont," and that this included defective whole nuts. The use of the merchandise was described by the witness as a filler in explosives.

The question before us for determination is whether this merchandise in its imported condition is tagua nuts or whether it has lost its character as tagua nuts or vegetable ivory and is a waste as that term has been defined in tariff nomenclature.

We gather from the statements of the only witness produced that tagua nuts are used to make buttons, and that the samples before us are a byproduct obtained in that process. Illustrative exhibit A, described as picos, consists of rather large, longitudinal, three-sided sections of the nut. Illustrative exhibit B, aserrin, consists of what the witness described as sawdust. Illustrative exhibit C, ojales, consists of slices about three-sixteenths of an inch in thickness having a hole in the center from which the button has been cut. As stated above the variety known as viruta was described by the witness as shavings. It is evident from the testimony and the samples that all of the merchandise consists of the material of the tagua nut or vegetable ivory, and is a byproduct obtained in the manufacture of buttons.

In the early case of *Andrews* v. *United States*, 8 Ct. Cust. Appls. 68, T. D. 37199, the court had before it for consideration tagua nuts cut into slabs, as a preparation for the making of buttons or like products. That case arose under the Tariff Act of 1913 and the question before the court was whether the commodity was dutiable as a nonenumerated manufactured article or free of duty as tagua nuts. The court discussed the definitions of tagua nut and vegetable ivory as found in dictionaries and the New International Encyclopaedia. It was there held that as there was no indication that the cutting of the nuts into slabs had either devoted them to a new use or withdrawn them from any general uses to which they were adapted, they had not been shown to have been removed from the *eo nomine* designation for tagua nuts in the statute. While the court was not called upon in that case to determine the applicability of the provision for waste, not specially provided for, the decision is enlightening in that the court's holding was based upon a finding that there was no indication that the cutting into slabs had established a new use nor had it circumscribed the uses to which the tagua nut as a whole could have been devoted. The court said:

There is no intimation or indication that it has any other use or purpose than the preparation of the tagua nut for the making of buttons or like products, and for this purpose there is no indication that the cutting into slabs has either devoted it to a new use or withdrawn it from any general uses to which it was adapted.

The testimony in the case now before us shows that the use of the instant merchandise is as a filler in explosives, which is a new use and different from that of the manufacture of buttons, and it is plain from an inspection of the samples that they have been withdrawn from the general use of manufacturing buttons.

In the Summary of Tariff Information, 1929, which was before the Committee on Ways and Means of the House when the present tariff act was under consideration, we find the following, at p. 2614:

Tagua nuts, also called corrozzo nuts, are obtained from a certain species of palm which grows in the northwestern part of South America and in Central

America. The kernel because of its hardness and whiteness is called vegetable ivory. It is used in the manufacture of buttons, umbrella handles, and small trinkets. The refuse from these manufacturing operations is used to make lactic acid.

The evidence before us has not shown any other uses for tagua nuts than those above enumerated, with the exception that the witness stated that defective nuts were used as filler in explosives. From all that appears, therefore, the merchandise now before us falls within the term "waste," as that term has been defined in the case of *Willits & Co.* v. *United States*, 11 Ct. Cust. Appls. 499, T. D. 39657. At page 501, the court, after discussing various decisions involving waste products, used the following language in relation to the merchandise there before it, which consisted of beef cracklings:

We think that the present merchandise answers to the definitions of waste enunciated by the foregoing authorities. The imported article, in fact, is refuse which is left over in the meat-packing industry; it is a material which is not susceptible of being used in the ordinary operations of a packing house; it is a final residuum remaining after all of the valuable elements for packing purposes have been extracted from it; it is not an article which is sought or purposely produced as a by-product in the industry; to the contrary, it is reduced in quantity to the lowest possible minimum as an unsought residuum; it has lost the quality and utility of meat both as a raw material and as a finished product, and the use to which it is finally put is foreign to the ordinary use of either raw or preserved meat. The article, furthermore, was not processed after it became a waste, * * *. These incidents serve to distinguish the present case from those relating to materials which, while low grade, nevertheless continue to possess the characteristics of their original estate * * * and also from those relating to valuable by-products which are designedly sought as desirable subsidiary products in manufacturing operations.

So in the present case, the commodity in the various forms as imported is a material which is not susceptible of being used in the same way as are tagua nuts, that is, in the manufacture of buttons, umbrella handles, and small trinkets. So far as the record shows it is not an article which is sought or purposely produced as a byproduct in the industry; it has lost its utility as a raw material from which buttons and ornaments are made. In other words, it is not a commodity which, although low grade, still possesses the characteristics it ordinarily had, nor is it a valuable byproduct designedly sought in the manufacture of buttons. It falls under that class of commodities which are not suitable for use for the purposes for which the original material is usually devoted.

The contention of the plaintiffs in their brief, that under the *eo nomine* rule the imported commodity should be free of duty, is without merit. The cases cited in support of this contention are distinguishable in that in all of those cases the merchandise involved appeared suitable for the uses to which the original article was devoted. The commodities now before us, as stated above, have lost their usefulness

for the original purpose to which tagua nuts are put, in fact, they constitute the refuse material remaining after that purpose has been accomplished.

For the foregoing reasons we find that the commodities are properly classifiable as waste under paragraph 1555, *supra*, as assessed.

Judgment will accordingly be rendered for the defendant.