(C. D. 1129)

LOUIS G. ROJAS
SUPERIOR FOOD PRODUCTS Co. } *v.* UNITED STATES

(Decided September 23, 1948)

*Harper & Harper* (*Walter I. Carpeneti* of counsel) for the plaintiffs.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, JUDGES

JOHNSON, Judge: The question arising in these cases concerns the classification of corn husks imported from Mexico through the port of Los Angeles. The collector assessed duty thereon at the rate of 7½ per centum ad valorem under paragraph 1555 of the Tariff Act of 1930, as modified by the trade agreements with the United Kingdom and Mexico, T.D.'s 49753 and 50797. The plaintiffs claim that the merchandise is free of duty under the provisions of paragraph 1722, as crude vegetable substances.

At the trial, samples of the corn husks were admitted in evidence and marked exhibit 1. The evidence consists mainly of the plaintiffs' only witness interpreting the Spanish names of the articles on the invoice, to wit, "hoja de maiz" and "hoja de mazorca" as each meaning in the English language, corn husks, and describing the method by which they are collected for export substantially as follows: The corn is allowed to dry upon the stalks. It is then detached from the stalks still surrounded with the husks. The detached portions include the butt end of the stem and the husks, as well as the corn. Later, the corn is removed from its surrounding tissue, consisting of the butt end which had been attached to the corn plant, the dried husks surrounding the corn, and the corn silk. The imports in question are the husks separated from the short auxiliary branch of the stalk known as the butt end, by cutting. In exhibit 1 the dried corn silk is still included in the husks.

The plaintiffs contend it has been established that the corn husks, other than being separated from the vegetable matter to which they were attached, have had nothing done to them. Not having been processed in any manner, it is argued that they cannot be considered a manufactured article, but remain a crude vegetable substance, citing *MacDonaugh & Co.* v. *United States*, 58 Treas. Dec. 406, T. D. 44311, involving cherry leaves preserved in brine; *Ueland* v. *United States*, 59 Treas. Dec. 1412, T. D. 44980, where hoy toy, split to facilitate drying was held to be a crude vegetable substance; *The Potter Parlin Co.* v. *United States*, T. D. 14739, involving refuse of mustard seeds, pressed and sifted; *United States* v. *Bayersdorfer & Co.*, 46 Treas. Dec. 497, T. D. 40542, involving ruscus leaves, sun dried, bleached, and disinfected, which were held to be crude; and several other authorities.

The Government, on the other hand, admits that the corn husks are crude vegetable substances and that the trimming on the ends does not remove them from the state of being crude, but contends, nevertheless, that they are more specifically provided for under the waste paragraph than as "vegetable substances, crude or unmanufactured." Reliance by the Government is put on the case of *Cia. Algodonera* v. *United States*, 23 C. C. P. A. 42, T. D. 47686, where cottonseed hulls, a byproduct of the oil mills, necessarily produced in such oil-mill operations, were held to be a waste. The court there cited many cases defining waste. All of the products at issue in those cases, which were held to be classifiable as waste, were the residue of a manufacturing operation.

A sound and practical definition of "waste" was announced by the appellate court in *Willits & Co.* v. *United States*, 11 Ct. Cust. Appls. 499, T. D. 39657, as follows:

* * * The imported article, in fact, is refuse which is left over in the meat-packing industry; it is a material which is not susceptible of being used in the ordinary operations of a packing house; it is a final residuum remaining after all of the valuable elements for packing purposes have been extracted from it; it is not an article which is sought or purposely produced as a by-product in the industry; to the contrary, it is reduced in quantity to the lowest possible minimum as an unsought residuum; it has lost the quality and utility of meat both as a raw material and as a finished product, and the use to which it is finally put is foreign to the ordinary use of either raw or preserved meat.

Again in *Harley Co.* v. *United States*, 14 Ct. Cust. Appls. 112, T. D. 41644, the appellate court defined the term "waste" as follows:

In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for the purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived.

In *Koons, Wilson & Co.* v. *United States*, 12 Ct. Cust. Appls. 418, T. D. 40589, the material before treatment was sugar beets, a crude vegetable substance. The importer sought to have the beet pulp, which was the residue after extraction of beet sugar, imported for use as cattle feed, admitted without the payment of duty as a crude vegetable substance. It had been assessed for duty as a waste, not specially provided for. The beet pulp was shown to be in the crudest form known to commerce and that it was not a manufactured substance. The court, however, took the view that the sugar beet was the crude vegetable substance and that the beet pulp might be a byproduct, holding that—

* * * the sugar beet ceases to be a "crude vegetable substance" when it goes through the process of manufacture; that the sugar becomes subject to the

tariff law governing sugar, and that the pulp, not being a fit substance from which to make sugar and only fit to be used for some other purpose, is properly classified as "waste."

A waste, therefore, is applicable to a material which has ceased, through some change, to serve its original purpose or to be what it originally was. It has neither the characteristics of the raw material nor of the finished product and is unsuited for the purposes of either in its imported condition. The corn husks before us are identical with the corn husks found upon corn stalks. There has been no change in them that would dedicate them to a specific use. They were crude vegetable substances while upon the corn stalks and so still remain.

The provision for waste, not specially provided for, is designed to include all wastes, not specially provided for, and to exclude other wastes provided for by name or under special waste provisions such as fur waste, cotton waste, etc. Such a catch-all, general provision for waste was not designed by Congress to supersede *eo nomine* provisions for a certain class or kind of material, such as "vegetable substances, crude or unmanufactured" in paragraph 1722. When Congress has provided for an article by a specific name, such must prevail over a provision in which the article is not enumerated in such a manner, but included within terms of general description. See *Wilson & Son* v. *United States*, 6 Ct. Cust. Appls. 255, T. D. 35476. The sole purpose of the courts in applying the rule of relative specificity in the construction of tariff statutes is to ascertain the legislative intent. In order to ascertain and carry out such intent, the courts have repeatedly held that an *eo nomine* designation must prevail over words of general description, unless in a particular case the Congress has indicated a contrary purpose. See *United States* v. *Wm. Cooper & Nephews, Inc.*, 22 C. C. P. A. 31, T. D. 47038. An *eo nomine* provision is not necessarily shorn of its controlling force because it is coupled with a "not specially provided for" clause. See *Bischoff & Co.* v. *United States*, 7 Ct. Cust. Appls. 138, T. D. 36458. The appellate court also has held that, in determining the classification of goods, an *eo nomine* designation, unless a legislative intent to the contrary is clearly indicated, must be preferred to terms of general description and to enumerations which are broader in scope and less specific. See *Andrews* v. *United States*, 8 Ct. Cust. Appls. 68, T. D. 37199.

It is well-known that thousands of acres of corn are grown in most of the states in this country, and that millions of dried cornstalks and corn husks are left annually upon the ground after corn has been harvested. The corn husks and cornstalks are not the residuum of any process of manufacture, nor may they be considered corn.

All that can be said of such material—and the material in question—is that it is the native vegetable matter which surrounds the ears of corn. All that has been done is to separate such vegetable matter from the ear or stalk by severing the husks therefrom. In the States of Oklahoma and Texas, where Mexicans deal extensively in the making and selling of hot tamales, Mexicans may be seen in many fields after the corn harvest picking up corn husks, known in the South as "shucks," identical with the import in question, to be used in connection with the wrapping of said tamales.

From the foregoing, not only are articles such as we have before us here excluded by the courts from the provision for waste, but goods which are admitted to be included *eo nomine* within a special classification are held to be more specifically provided for therein than in classifications of broader scope. It is clear, therefore, that the Government's contention is without merit, and the plaintiffs are entitled to the classification contended for in the protests.

Judgment will therefore be entered in favor of the plaintiffs directing the collector to reliquidate the entries, making refund of all duties taken upon the corn husks in question, in accordance with law.