(C. D. 2288)

RECTOR MINERAL TRADING CORPORATION ET AL. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 2, 1961)

*Peebles Greenberg & Keele* (*Harold M. Keele* and *Halbert O. Crews* of counsel) for the plaintiffs.

*William H. Orrick, Jr.*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The plaintiffs in the protests enumerated in the attached schedule imported into the port of Chicago a number of bales of a commodity which the collector classified as "regranulated cork" and on which he assessed duty at the rate of 1 cent per pound under the provision therefor in paragraph 1511 of the Tariff Act of 1930. By their protests herein, the plaintiffs claim that the commodity is not regranulated cork, but is cork waste or cork refuse and is entitled to free entry under the provisions therefor in paragraph 1661 of the

said act. The pertinent portions of the statutes are quoted in the margin.[1]

There is no serious dispute as to the manner in which the merchandise involved was produced. Cork is obtained from the cork oak tree in at least two grades. The lower grade is used to make cork board by the following process: The cork is ground into particles of sizes from 4 to 15 millimeters; the particles are placed in a mold and steam baked at high temperatures. During the course of the baking, the cork expands, and the natural resins present therein are driven out and form a binder to cause the ground-up particles of cork to adhere to one another, forming a block, in the shape of the mold, or more or less solid material.

After baking, the cork block is removed from the mold and is trimmed and cut to standard dimensions, or to shapes that will fit around piping, etc. The trimmings from such cutting and broken pieces that occur from handling the molded material are the product from which the imported merchandise is made.

These are broken up in a machine, such as a hammer mill, and screened into particles of approximately the original sizes, i.e., 4 to 15 millimeters, and the product is made into compressed bales in cube form by means of a hydraulic press, and the bales covered with burlap and wrapped with wire.

After importation, the wires around the bales are clipped and the burlap taken off the bales, which are then placed in a bale breaker. The result of that process is put through a hammer mill to break up the pieces, and a screening operation to remove dust. The result is again pieces of the original particle size.

After being treated, as above stated, the importer uses the imported material in the manufacture of an asphalt mastic product which is used as a joint filler in concrete construction.

Citing *Willits & Co.* v. *United States*, 11 Ct. Cust. Appls. 499, T.D. 39657, plaintiffs contend that the imported merchandise meets every test of a "waste," as there defined. Further, plaintiffs contend that the term "regranulated cork" refers to a different kind of cork, i.e., one in which the natural cork has not been expanded by baking, altering its cellular structure.

The evidence offered by the plaintiffs on the latter point is to the effect that natural cork is first boiled to get rid of the tannins and resins and other soluble materials present therein, after which it is made into natural cork products, such as stoppers, champagne corks,

---

[1] PAR. 1511:

* * * clean, refined, or purified, granulated or ground cork, weighing not over six pounds per cubic foot uncompressed, 3 cents per pound; all other ground, granulated, or regranulated cork, 1 cent per pound * * *.

PAR. 1661:

* * * cork waste, shavings, and cork refuse of all kinds [free].

etc. The scrap from such processes is ground and mixed with a gelatin or synthetic resin binder and baked at low temperatures, just enough to set the binder. The result is called composition cork and is used in the manufacture of gaskets, disks for metal bottle tops, etc. The scrap from the manufacture is reground, in which state, according to plaintiffs' witness, it is known in the composition cork industry as "regranulated cork" and is used to produce composition cork again.

According to the same witness, the term "regranulated cork" was originally applied only to the material produced, as above outlined, in the composition cork industry, at which time and up to about the mid-1940's the scrap from the manufacture of cork board, which he personally designated as "pieces of insulation cork," had no use and was taken out and burned. However, the witness did say that the term "regranulated cork" was gradually used also for the imported material and that it is so designated today.

Merchandise referred to as "regranulated cork" has been the subject of decision by this court under both the present tariff act and the Tariff Act of 1922. In the case under the earlier act, *Cork Import Corp.* v. *United States*, 60 Treas. Dec. 730, T.D. 45223, the merchandise, which was shown to have been made from the trims of cork board, had been assessed with duty under the provision for "granulated cork" and was claimed to be entitled to free entry under the provision for cork waste or cork refuse.

Upon a showing that granulated cork is the product made from cork bark or raw cork which has been ground, this court held that the merchandise before it was not granulated cork, but regranulated cork. Since it was so known and dealt in, and was produced from the trims of cork board by processes of manufacture, i. e., breaking up and screening, it was held to be itself a manufacture and not a waste or refuse. There being no provision in the Tariff Act of 1922 for "regranulated cork," it was held to be subject to duty under the catchall provision for nonenumerated manufactured articles.

A similar situation was presented in the case which arose under the Tariff Act of 1930, *Wicander & Co., Inc.* v. *United States*, 68 Treas. Dec. 144, T.D. 47828, but inasmuch as there is in the present act an *eo nomine* provision for "regranulated cork," it was held that the merchandise was properly classified thereunder.

A consideration of these decisions, in conjunction with the evidence offered by the parties, establishes that the product of breaking up the trimmings and broken pieces of cork blocks or cork boards and screening the same to get particles or granules again is and has long been known as regranulated cork. From the dates of the decisions involved (1931 and 1935, the former involving merchandise imported during the life of the Tariff Act of 1922), it would appear that this

was the fact at and prior to the time of the passage of the Tariff Act of 1930, and although one of plaintiffs' witnesses testified that, according to his experience, the trims and broken pieces were taken out and burned up until the mid-1940's, it appeared that his own experience in the cork industry dated back only to 1942.

It may very well be, as indicated by the testimonial evidence in this case, that, *in the composition cork industry*, the reground scrap resulting from its processes is also known as "regranulated cork," but we do not think that it has been established herein that the term "regranulated cork," as used in paragraph 1511 of the Tariff Act of 1930, excludes merchandise such as that at bar.

It may also well be that the trimmings and broken pieces *before they have been broken up and screened into particle or granule sizes* are cork waste or cork refuse within the meaning of those terms, as used in paragraph 1661 of the 1930 act. *Cf. Chrystal* v. *United States*, 5 Ct. Cust. Appls. 489, T.D. 35148. In this connection, plaintiffs contend that the evidence establishes that the breaking-up of such trimmings and broken pieces into particle or granule size was effected solely for the purpose of convenience and economy in transportation, and cite the case of *Gudewill & Bucknall* v. *United States*, 142 Fed. 214, as authority for holding that, in such circumstances, the tariff classification of the merchandise as waste was unchanged by the breaking-up process.

It is a well-established principle of tariff law that the application to a material of processes such as grinding or crushing for the sole purpose of convenience or economy in packing or shipping do not ordinarily take the material out of the tariff classification which applied to it in its state before such processes were applied to it. *United States* v. *C. J. Tower & Sons*, 17 C.C.P.A. (Customs) 90, T.D. 43437, and cases cited therein, one of which is the *Gudewill & Bucknall* case, *supra.*

This rule is subject to the condition that if the application of the processes to the material results in a product having a different classification from that of the original material, the rule does not apply. The reason for this is that the enactment of a tariff provision which covers the material in its processed form is the manifestation of a legislative intent that the rule should not apply in that instance.

We think that there is apparent in the action of the Congress in providing *eo nomine* for "regranulated cork" by the enactment of paragraph 1511, *supra*, the legislative intent that such merchandise, even though produced from cork waste or refuse by a grinding or breaking-up and screening process, should be classified for duty purposes under that provision, rather than under the provision for cork waste or refuse.

The claim made in each of the protests for free entry under paragraph 1661, *supra*, is, therefore, overruled, and judgment will issue accordingly.