(C.D. 2517)

ALINTEX, INC., ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

[Judgment in part for plaintiffs.]

(Decided March 1, 1965)

*Walter E. Doherty, Jr.,* for the plaintiffs.

*John W. Douglas,* Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: The cases listed in schedule "A," attached hereto and made a part hereof, involve the proper classification of certain rayon which was assessed with duty at the rate of 15 per centum ad valorem under the following provisions of paragraph 1302 of the Tariff Act of 1930, as modified by the Torquay Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739:

Filaments of rayon or other synthetic textile, not over 30 inches long, other than waste, whether known as cut fiber, staple fiber, or by any other name_____ 15% ad val.

The importers claim said merchandise to be properly subject to duty at only 5 per centum ad valorem under said paragraph 1302 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which provides as follows:

Waste of rayon or other synthetic textile, except waste wholly or in chief value of cellulose acetate_____ 5% ad val.

The record in this case is extensive and consists of the testimony of three witnesses called on behalf of the plaintiffs and seven called on behalf of defendant, together with numerous exhibits received on behalf of both parties. Basically, all of the witnesses called on behalf of the plaintiffs testified that based upon their experience there is an article known as rayon staple fiber which must be uniform in length,

denier, luster, tensile strength, and have a dye code index. They further indicated that it must be clean and free of splinters, etc., and, in the event that it was not uniform in the above characteristics or did not have a dye code index, it was considered as waste. Their testimony also related to the various processes during production where waste could occur. However, the record is barren of any evidence as to how or when, if, in fact, the involved merchandise is waste, the so-called waste occurred.

All witnesses called on behalf of both parties agreed that the imported merchandise, except as to the merchandise represented by exhibits 9, 15, and 16, which will hereinafter be discussed separately, could, in its condition as imported, be spun without further processing, such as but not limited to garnetting, picking, etc., on the cotton, woolen, or worsted systems.

On the other hand, the witnesses called on behalf of defendant testified, except as to the merchandise represented by exhibits 9, 15, and 16, that the imported merchandise as represented by the various exhibits, which exhibits are claimed to be representative of the imported merchandise, was rayon staple fiber. It is their collective testimony that rayon staple fiber is dealt in the trade in various grades and that, where the merchandise is not perfect, it may be degraded and sold as rayon staple fiber of various grades.

All witnesses for both parties agree that the merchandise represented by exhibits 9, 15, and 16 is waste.

The witnesses called on behalf of defendant testified that rayon waste falls into two categories, (1) filament thread waste which would be composed of long continuous filaments, and (2) rayon staple fiber waste which would be a conglomeration of mixed lusters, deniers, lengths, and finishes. The record further establishes that the dye code index has no significance in the processing of staple fiber, is simply a guide to the customer to inform him that, so long as the same lot numbers are mixed, there would be no adverse effect on dyeing. It was further pointed out that staple fiber can be stock dyed before it is spun into yarn, or spun dyed, packaged dyed, or dyed in fabric form. All of these methods are available and appropriate to off-quality rayon staple fiber.

The opinions of the witnesses called on behalf of defendant, as to what rayon staple fiber waste is, appear to be that said waste is a conglomeration of lusters, deniers, lengths, etc., which would require further processing before it could be spun. Staple fiber, first quality or degraded staple fiber, in their opinions, is such as is suitable in its condition as purchased to be spun without further processing.

It is interesting to note that the imported merchandise is invoiced by item numbers, which numbers constantly appear on the various

invoices. The record discloses that the same item number represents the same type of merchandise, i.e., having an average denier, length, luster, etc. This, on its face, would appear to be contrary to all concepts of waste, since it would be a waste having a consistent average denier, length, luster, etc. There appears to be no dispute that the involved merchandise is filaments of rayon not over 30 inches long. However, if it is a waste, even if it consists of filaments of rayon not over 30 inches long, it cannot be classified under said provision.

Just what constitutes waste has been before the courts on many occasions. In *United States* v. *C. J. Tower & Sons*, 31 CCPA 185, C.A.D. 271, the appellate court, in considering the question of waste, made the following comment (page 187) :

The trial court, in an opinion by Oliver, Presiding Judge, stated that it agreed with counsel for the parties that the merchandise was waste, and quoted from our decision in the case of *Harley Co.* v. *United States*, 14 Ct. Cust. Appls. 112, T.D. 41644, as follows:

In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived. The latter class of waste might be appropriately designated as new waste and includes such things as tangled spun thread, coal dust, broken or spoiled castings fit only for remanufacture. T.D. 33376; *Willets* v. *United States*, 11 Ct. Cust. Appls. 499, 500, 501; *Schlesinger* v. *Beard*, 120 U.S. 264; *Seeberger* v. *Castro*, 153 U.S. 32; *Patton* v. *United States*, 159 U.S. 500, 505, 509; *Latimer* v. *United States*, 223 U.S. 501–503.

As appears from the quoted statement in the *Harley Co.* case, *supra*, there are two kinds of waste; namely, one, a manufactured article which, because of use or otherwise, has become useless for the purpose for which it was designed and is fit only for remanufacture; and, two, so-called "new waste," which is refuse material resulting from a manufacturing process and which is commercially unfit without remanufacture for the purpose for which the original material was suitable.

The basic elements pointed out above are substantially within the purview of the definition of the term "waste," as set forth in Webster's New International Dictionary of the English Language (unabridged) 1929, which definition, so far as pertinent herein, is as follows:

waste * * * 6. That which has no original value or no value for the ordinary or main purpose of manufacture; remnants not fit for the use for which the stuff is made or intended; superfluous or rejected matter; refuse. Specif.: a Remnants of cops, etc., from the working of cotton, wool, hemp, and the like, used for wiping machinery, absorbing oil, as in axle boxes of railroad cars, etc. * * *

It has been held that waste ordinarily implies superfluous, useless, or rejected material, something left over in the treatment of material, once obtained, as distinguished from the treatment to obtain the material itself. *United States* v. *Salomon*, 1 Ct. Cust. Appls. 246, T.D. 31277.

In the case of *Louis G. Rojas and Superior Food Products Co.* v. *United States*, 21 Cust. Ct. 68, C.D. 1129, this court held waste to be a material which had ceased through some change to serve its original purpose and had the characteristics neither of the raw material nor the finished product and was unsuited for the purposes of either in its imported condition.

There have been three cases involving substantially the same question of law as is involved herein. *Lustre Fibers, Inc.* v. *United States*, 31 Cust. Ct. 318, Abstract 57663; *A. L. Erlanger Co., Inc.* v. *United States*, 35 Cust. Ct. 189, C.D. 1742; and *Dolliff & McGrath* v. *United States*, 40 Cust. Ct. 560, Abstract 61961.

The *Lustre Fibers* case, *supra*, was decided solely on the basis of failure of proof and, accordingly, is not controlling herein. In the *Erlanger* case, *supra*, the merchandise involved was a heterogeneous mixture of all wastes or all the inferior grades at various stages of processing which were mixed together. This court, in arriving at its conclusion that the imported merchandise involved therein was waste, quoted the following from the case of *Patton* v. *United States*, 159 U.S. 500:

* * * The prominent characteristic running through all these definitions is that of refuse, or material that is not susceptible of being used for the ordinary purposes of manufacture. It does not presuppose that the article is absolutely worthless, but that it is unmerchantable and used for purposes for which merchantable material of the same class is unsuitable.

\*          \*          \*          \*          \*          \*          \*

If the ordinary definition of "wastes," as refuse matter thrown off in the process of manufacture, is to control, it is quite clear that the importations in question are not susceptible of this meaning. The common definition of "waste" lends no support to the theory of the defendants.

\*          \*          \*          \*          \*          \*          \*

We are also of opinion that the importations in question cannot be considered as manufactures of wool. Assuming that the tops, before being broken up, represented a stage in the process of converting the wool into cloth, which would entitle them to be considered as manufactures; if the tops be reconverted into wool, so that the process has to be gone through with again, the wool loses its character as a manufacture and resumes its character as wool, even though it acquires the new commercial designation of waste. Waste in its ordinary sense being merely refuse thrown off in the process of converting raw wool into a manufacture of wool, cannot be considered a manufacture simply because it acquires a new designation, and if it be artificially produced by the breaking up

of the tops it is with even less reason entitled to be so considered. Unless natural waste can be treated as a manufacture, artificial waste should not.

In the *Erlanger* case, *supra*, the court made the following observation:

The involved merchandise, after it had been taken from the machines, in order to permit such machines to produce merchantable staple fiber, or after it had been removed from the floor where it had fallen as an offal, was not subjected to any manufacturing process prior to importation.

In the *Dolliff & McGrath* case, *supra*, the record in the *Erlanger* case, *supra*, was incorporated. The court concluded that the merchandise involved therein, produced in the same manner, was properly subject to classification as waste of rayon. In both cases, the witnesses testified that the imported merchandise consisted of a mixture of rayon filaments from all stages in the process of manufacture, including sweepings from the floor.

In the case at bar, there is no such evidence. In fact, the imported merchandise is invoiced by item numbers, which item numbers are indicative of a certain type of merchandise, i.e., item 97783 appears on 15 of the invoices before the court and is agreed to be the same as merchandise represented by exhibit 1. In addition to the so-called "waste" being consistent in characteristics, all witnesses agreed that the merchandise in its condition as imported, except as to merchandise represented by exhibits 9, 15, and 16, was capable of being spun without further processing. It would, therefore, appear that the imported merchandise is not a substance which has ceased through some change to serve its original purposes and obviously has the characteristics of the article which was intended to be produced, possibly at a lower grade. Based upon the foregoing, it does not appear that the imported merchandise falls within the category of "waste," as contended for by plaintiffs herein.

As indicated, *supra*, all witnesses agreed that exhibits 9, 15, and 16 were thread waste and not staple fiber. They further agreed that additional processes would be necessary before it could be utilized as staple fiber. A review of the record establishes that exhibit 9 was alleged to represent lot number 98306 on the invoice covered by protest 60/31202. Exhibits 15 and 16 allegedly covered lot numbers 98305 and 98307 on the invoices covered by said protest. An examination of the invoice covered by protest 60/31202 establishes that only lot number 98306 was covered by the invoice. Therefore, it would appear that exhibits 15 and 16 do not represent any of the merchandise covered by this protest or any of the consolidated protests. A question is also presented as to whether exhibit 9 is representative of lot number 98306 covered by protest 60/31202. The examiner, who concedes

he would classify merchandise such as is covered by exhibit 9 as "waste," denies it is representative of the merchandise covered by said protest.

Unfortunately and contrary to requirements that samples be transmitted to the court, the governmental officials in charge, at the request of a local fire marshal, destroyed the official sample. The importer, however, has testified that exhibit 9 is representative of lot number 98306 covered by protest 60/31202. There being no contrary evidence, except as to the statement of the examiner who obviously had not seen the imported merchandise for some time prior to the trial, we accept the statement of the importer and, insofar as protest 60/31202 is concerned, it is sustained.

Accordingly, except as to protest 60/31202, plaintiffs have failed to overcome the presumption of correctness attached to the collector's classification as filaments of rayon or other synthetic textile, not over 30 inches long, other than waste, whether known as cut fiber, staple fiber, or by any other name. The protests are, therefore, overruled.

Judgment will be rendered accordingly.